UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 17-00697 SJO | | Date | June 21, 2018 |
|---|---|---|---|---|

| Present: The Honorable | S. James Otero |
|---|---|
| Interpreter | Not Required |

| Victor Paul Cruz | Not Present | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Daniel Flint | Not | | xx | Craig A. Harbaugh | Not | | xx |

**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION IN LIMINE** [Docket No. 35]

This matter is before the Court on United States of America's (the "Government") Motion in Limine ("Motion") filed on May 8, 2018. Defendant Daniel Flint ("Defendant") opposed the Government's Motion ("Opposition") on May 15, 2018. The Government replied ("Reply") on May 18, 2018. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for May 24, 2018. For the following reasons, the Court **GRANTS IN PART and DENIES IN PART** the Government's Motion.

I.   FACTUAL AND PROCEDURAL BACKGROUND

   A.   Charged Offense

On October 13, 2017, the Government obtained a complaint ("Complaint") charging Defendant with entering an airport security area in violation of security requirements, in violation of 49 U.S.C. §§ 46314(a) and (b)(2). (Compl., ECF No. 1.) On November 7, 2017, the Government charged Defendant in an Indictment with "knowingly and willfully enter[ing] an airport area that serves an air carrier" in violation of security requirements prescribed under 49 U.S.C. §§ 44901 and 44903(c). (*See* Indictment, ECF No. 15.) Specifically, the Indictment alleges that, on or about July 25, 2017, Defendant:

> entered a secured and sterile area of Terminal 3 at Los Angeles International Airport carrying items that had not been screened and inspected by the Transportation Security Administration ("TSA") and approved for entry by TSA into the secured area of the airport, namely, a pouch containing approximately $148,145 in United States currency separated into several plastic bags. Defendant FLINT intentionally evaded security screening procedures for this pouch by falsely claiming that it was a diplomatic courier pouch that was exempt from TSA screening and by presenting documents purporting to support defendant FLINT's false claim of diplomatic status.

(Indictment 1-2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

  B. <u>Defendant's Previous Attempts to Evade Security Screening</u>

On July 20, 2017, Defendant was booked on a ticket traveling to Los Angeles International Airport ("LAX"), and entered the TSA security checkpoint area for the Chicago O'Hare International Airport ("ORD") with a purported diplomatic pouch, a laminated International Human Rights Commission ("IHRC") diplomatic courier identification card, a purported diplomatic courier letter dated July 20, 2017 that was stamped with the purported seal of the IHRC, and his Michigan driver's license.  (Mot., Ex. A ("ORD Incident Report") 6-10, ECF No. 42.)  Supervisory Transportation Security Officer ("STSO") Christopher Kotula and supervisory TSA managers reviewed Defendant's documentation and ultimately denied his request to exempt his pouch from full screening because he did not have a diplomatic passport, as was required by TSA's Standard Operating Procedures.  (ORD Incident Report 6.)

Within an hour-and-a-half of Defendant's attempt to evade security screening at ORD, he booked a different flight from Chicago Midway International Airport ("MID") to LAX, and was at MID's TSA security screening checkpoint, once again asserting diplomatic protections over his pouch.  (Mot., Ex. D ("MID Incident Report") 1.)  Defendant presented his laminated diplomatic identification card, purported diplomatic courier letter, and his driver's license, as well as his State Bar identification card.  (MID Incident Report 1.)  MID TSA personnel permitted Defendant to enter the airport's secure area without submitting his pouch for full screening.  (Midway Incident Report 1.)  Later that day, after Defendant's departure from MID, ORD TSA personnel sent MID a message warning them of Defendant's previous attempt to evade TSA screening at ORD, and advising them that a diplomatic courier must possess a diplomatic passport.  (Mot., Ex. C ("ORD Email") 1.)

On July 25, 2017, Defendant returned to MID with another diplomatic courier letter, his laminated diplomatic identification card, his purported diplomatic courier pouch, and another ticket to fly from MID to LAX.  (Mot., Ex. E ("MID Email") 3-4.)  Once again, MID's TSA personnel permitted Defendant to enter the airport's secure area without submitting his pouch for full screening.  (MID Email 4.)  After realizing their error, MID security officials contacted LAX to request a reverse screening of Defendant's pouch upon his arrival.  (MID Email 3.)

When he landed, Defendant was intercepted by Federal Bureau of Investigation ("FBI") Special Agents and consented to an interview.  (Mot., Ex. G ("FBI Report") 1.)  During the interview, Defendant told the agents that: (1) he was an attorney who had worked for Douglas Hampton ("Hampton") at the Hampton Law Group since 2010; (2) he was a United States national and a diplomat for IHRC representing the United States; (3) he was entitled to diplomatic immunity under his "reading" of the "Geneva Convention"; (4) he was unaware of the diplomatic passport requirement for courier pouches; and (5) he did not recall being denied entry after presenting his credentials.  (FBI Report 1-5.)   Defendant admitted the pouch had not been subjected to a full screening (FBI Report 5), and that he laminated his diplomatic identification card himself.  (Compl. Aff. ¶ 11(d).)  Defendant made multiple calls to Hampton and the alleged IHRC ambassador, Robert Shumake ("Shumake"), before allowing the pouch to be opened.  (FBI Report 4.)  The pouch contained approximately $148,145 wrapped in plastic shopping bags.  (Mot., Ex. F 5-7.)  The Drug Enforcement Administration seized the cash after it was positively alerted by a drug canine.  (FBI Report 6.)

  C. <u>Hampton's Previous Attempt to Evade Security Screening</u>

On August 22, 2016, Hampton presented a "direction letter" bearing a similar IHRC logo as Defendant's diplomatic courier letter to security officers at the Hartfield-Jackson-Atlanta International Airport ("ATL").  (Mot., Ex. H

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

("DHS Report") 10-11.) Hampton's "direction letter": (1) identified Hampton as a "Designated Agent pursuant to [his] appointment as General Legal Counsel to the Office of the [IHRC]"; (2) identified $147,000 of the cash Hampton carried as being "of legal origin" that "is being transported [to fund] philanthropic projects on behalf of the [IHRC] throughout Africa and the Caribbean markets," despite Hampton's statement he was supposed to provide it to an unknown individual in San Francisco; (3) cited "Articles 23 through 30 of the Vienna Convention on Representation of States in their relations with International Organizations of a Universal Character" in asserting diplomatic protections over the funds; (4) was signed by "H.E. R.S. Shumake" with similar titles as on Defendant's letters; and (5) identified Defendant "Daniel C. Flint, Esq." as the "General Counsel" for the IHRC and instructed that any questions be directed to IHRC or Defendant. (DHS Report 10-11.) Hampton made similar assertions to those made by Defendant during his FBI interview, but he directed questions related to the letter and his transportation of bulk cash to the IHRC or Defendant. (*See* DHS Report 10-11.) ATL's airport personnel noted a smell of marijuana, which Hampton asserted was coming from the pouch. (DHS Report 6-7.) A certified narcotics detection canine positively identified the bulk cash, which amounted to approximately $170,000, and was subsequently seized. (DHS Report 9.)

      D.    <u>Instant Motion</u>

The Government now moves to admit evidence of Defendant's and his co-conspirator, Hampton's, attempts to evade TSA security screening of bulk cash by falsely asserting diplomatic protection, because those acts are: (1) inextricably intertwined with the charge offense; and (2) relevant to prove Defendant's motive, knowledge, absence of mistake, and intent, pursuant to Rule 404(b). (*See generally* Mot.)

Trial is set for July 10, 2018.

II.    <u>DISCUSSION</u>

      A.    <u>Legal Standards</u>

Motions in limine are "important tool[s] available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (9th Cir. 1997). Regardless of a court's initial decision on a motion in limine, however, it may revisit the issue at trial. *See Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41-42).

Rule 404(b) prohibits the use of evidence of a crime, wrong or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of "other acts" is not subject to Rule 404(b) analysis if it is "inextricably intertwined" with the charged offense. *See United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir.1995). This exception applies when (1) "particular acts of the defendant are part of ... a single criminal transaction," or when (2) " 'other act' evidence ... is necessary in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the

crime." *Id*. at 1012–13. In order to satisfy this exception, "[t]here must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime." *Id*. at 1013.

Alternatively, under Rule 404(b), other acts evidence is admissible if it: (1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged. *See United States v. Murillo*, 255 F.3d 1169, 1175 (9th Cir.2001), *cert. denied*, 535 U.S. 948, 122 S.Ct. 1342, 152 L.Ed.2d 245 (2002). The court must then assess the evidence under Fed.R.Evid. 403. *See United States v. Rude*, 88 F.3d 1538, 1549–50 (9th Cir.1996).

Even where relevancy is satisfied, Rule 403 requires that evidence be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403."Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Hankey*, 203 F.3d at 1172 (citation omitted). Rule 403's "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Id*.

    B.    <u>Analysis</u>

        1.    <u>Defendant's Successful Attempt to Evade Screening at MID on July 25, 2017 Is Inextricably Intertwined With the Charged Offense</u>

The Government argues that Defendant's interactions with MID personnel on July 25, 2017 constitute a part of the charged transaction, and thus is inextricably intertwined with the charged offense. (Mot. 10.) The Government also contends that this evidence is necessary to prove whether Defendant's pouch was unscreened when he landed at LAX. (Mot. 10.) Defendant argues that his conduct at MID is wholly separate from the crime charged in the Indictment. (Opp'n 2.)

Defendant is charged with "enter[ing] a secured and sterile area of Terminal 3 at Los Angeles International Airport carrying items that had not been screened and inspected by the Transportation Security Administration." (Indictment 1.) Defendant argues that his conduct at Midway does not prove an element of the charged offense, because he interprets 49 C.F.R. § 1540.107 ("§ 1540.107")[1] to mean that the Government must prove that he failed to submit to security procedures at LAX. (Opp'n 4.) However, the plain language of § 1540.107 only requires that the Government prove that Defendant failed to submit to the screening of his property to "in accordance with the [security] procedures being applied to control access" to Terminal 3 of LAX, but does not require that the screening take place at LAX. Accordingly, Defendant's evasion of security screening at MID on July 25, 2017 "bore directly on the commission of the charged crimes," and is thus inextricably intertwined with the charged crime. *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012).

        2.    <u>Defendant's Attempt to Evade Security Screening at ORD on July 20, 2017 and His</u>

---

[1] § 1540.107 states that, "No individual may enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person and accessible property in accordance with the procedures being applied to control access to that area or aircraft under this subchapter." 49 C.F.R. § 1540.107.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

<u>Subsequent Travel to MID to Evade Screening Is Not Inextricably Intertwined with the Charged Offense</u>

The Government contends that Defendant's July 20, 2017 unsuccessful attempt to evade TSA security screening at ORD and his subsequent travel to MID to successfully evade security screening are also inextricably intertwined with the charged offense. (Mot. 10.) The Government argues that Defendant's July 20, 2017 acts were part of the same overall scheme that enabled Defendant to enter LAX with an unscreened pouch on July 25, 2017. (Mot. 10-11.) In each of Defendant's interaction with Chicago airports, he performed the following actions: (1) presented nearly identical false diplomatic courier letter from the IHRC asserting diplomatic protections over a pouch transporting bulk currency for, among other things, philanthropic projects and a cash deposit for real estate in northern California; (2) presented a false, laminated diplomatic identification card as part of his diplomatic credential, which he used to assert that he was a credentialed diplomat exempt from airport security screening requirements, despite possessing no diplomatic passport; and (3) attempted to initiate a flight itinerary beginning in Chicago and ending at LAX. (Mot. 10-11.) The Government argues that these acts were closely related in time, geography, and methodology, and directly led to the charged offense. (Mot 11-12.)

The Government also contends that Defendant's July 20, 2017 unsuccessful screening at ORD directly led to his successful attempt to avoid security screening at MID that same day, which explains why Defendant returned to MID five days later with nearly identical credentials and documentation, and landed at LAX with an unscreened pouch, as charged in the Indictment. (Mot. 12.) Thus, the Government argues, admission of Defendant's July 20, 2017 acts are "necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." (Mot. 12 (quoting *Dorsey*, 677 F.3d at 951.).)

        a.      <u>Defendant's Actions at ORD and MID on July 20, 2017 Are Not Inextricably Intertwined to the Charged Events.</u>

The Government states that the Ninth Circuit held that, "uncharged transactions that are part of an overall scheme are 'part of the same transaction', " *United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016), but fails to point out that the Ninth Circuit specified that its holding was specifically "[i]n the context of mail and wire fraud." *Id*. The courts have held that "other acts" not charged were part of the same transaction as the charged crime when the uncharged acts were part of the overall fraud or conspiracy scheme . *See United States v. Mundi,* 892 F.2d 817 (9th Cir. 1989) (affirming the district court's determination that testimony about other travel agencies not mentioned in the indictment for wire fraud was admissible because they were part of the defendant's overall scheme to defraud travel agencies); *see also United States v. Sayakhom*, 186 F.3d 928 (9th Cir. 1999) (holding that evidence of the defendant's operations through a second entity after her first fraudulent entity was shut down by government was admissible in a mail fraud case, because both entities were part of an ongoing scheme of fraudulent sale of life insurance products through the mail.).

Defendant is not charged with mail or wire fraud. Rather, he is charged with one count of knowingly and willfully entering LAX in violation of security requirements under 49 U.S.C. §§ 44901 and 44903(c). (*See generally* Indictment.) Defendant's actions at ORD and MID on July 20, 2017 were not part of an overall fraudulent scheme. They were a separate event that occurred several days earlier, and thus were not inextricably intertwined with the charged crime.

Furthermore, Defendant's actions on July 20, 2017 are not necessary to enable the Government to tell a complete

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

and comprehensive story about what Defendant did at LAX on July 25, 2017, which is the conduct that Defendant is being charged for. The Government must prove: (1) Defendant knowingly and wilfully entered an LAX area in violation of security requirements; and (2) Defendant intended to evade security procedures. (Motion at 13.) Defendant's actions on July 20, 2017 are not necessary to present the story behind the crime charged. Consequently, it cannot be said that Defendant's actions on July 20, 2017 are inextricably intertwined with the present charge, and thus the Government is not exempt from Rule 404(b).

> b. <u>Evidence of Defendant's Actions at ORD and MID on July 20, 2017 Is Admissible Under Rule 404(b)</u>

Pursuant to Rule 404(b), evidence of prior criminal activity may be admissible to prove Defendant's motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident. Fed. R. Evid. 404. The Ninth Circuit's test to assess whether criminal conduct may be admissible is if: (1) the evidence tends to prove a material pont; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) the act is similar to the offense charged. *United States v. Vizcarra-Martinez,* 66 F.3d 1006, 1013 (9th Cir. 1995). The threshold inquiry a court must make before admitting similar acts is whether that evidence is probative of a material issue other than character. *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Defendant's conduct on July 20, 2017 meets this threshold.

When Defendant attempted to bypass security at ORD on July 20, 2017, he was informed by TSA security that his documentation was insufficient to exempt him from security screening based on diplomatic status. (ORD Incident Report 6.) Therefore, his attempt and subsequent denial of entry provided Defendant with affirmative knowledge that he had to undergo security screening in order to enter the airport. Defendant's attempt to bypass the security screening a mere hour and a half after his denial at ORD tends to prove that his attempts were not mistakes or accidents, but instead were intentional and planned. Defendant's presentation of the same type of documentation at MID on July 20, 2017 and July 25, 2017 shows that Defendant's motive behind carrying those documents was precisely to attempt to bypass security.

Defendant's conduct at ORD and MID on July 20, 2017 occurred a mere five days before the charged events, which is not remote in time; Defendant committed the acts himself; and the conduct was substantially similar to the charged offense on July 25, 2017. In sum, Defendant's actions on July 20, 2017 tend to prove his knowledge, lack of mistake, plan, and intent on July 25, 2017. Therefore, the Court concludes that evidence of Defendant's conduct at ORD and MID on July 20, 2017 is admissible as other acts under Rule 404(b).

> c. <u>The Probative Value of Defendant's July 20, 2017 Conduct Outweighs Any Undue Prejudice</u>

Defendant argues that even if the Court deems his July 20, 2017 actions admissible under Rule 404(b), they are nevertheless inadmissible under Rule 403. (Opp'n 9.) Rule 403 states that, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Defendant argues that by admitting other acts, the Government hopes to make the case about whether Defendant violated screening requirements at other times and other dates, "result[ing] in substantially unfair prejudice to his defense." (Opp'n 9.) The Court disagrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Unfair prejudice "does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed [unfairly] prejudicial. *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009). Defendant's previous attempts are highly probative of Defendant's lack of mistake, motive, plan, and intent. The Court finds that the probative value is not outweighed by unfair prejudice, because "the evidence [of Defendant's previous attempts to evade airport security screening] did not involve conduct more inflammatory than the charged crime." *United States v. Livoti*, 196 F.3d 322, 326 (9th Cir. 1999). Therefore the Court holds that any potential prejudice caused by its admission would not warrant exclusion under Rule 403.

        3.        <u>Hampton's Attempt to Evade Screening at ATL Is Inadmissible</u>

The Government argues that Hampton's attempt to evade security screening at ATL is inextricably intertwined with Defendant's charged offense, due to the similarity in purpose, method, quantity of cash, and the identities of the individuals involved. (Mot. 15-16.) Hampton's conduct occurred nearly one year prior to the charged conduct in a different state. It is neither part of the same transaction, nor necessary to permit the Government to offer a coherent story regarding the charged offense. Hampton's attempt to evade security screening at ATL is also inadmissible under Rule 404(b), since Defendant did not commit the "other act" at issue. *Vizcarra-Martinez,* 66 F.3d 1006, 1013. It is thus inadmissible.

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** the Government's Motion. The Court's rulings herein are subject to reconsideration depending on what occurs at trial. *See Luce*, 469 U.S. at 41-42.

IT IS SO ORDERED.