NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
CHRISTINE M. RO (Cal. Bar No. 285401)
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorneys
General Crimes Section
    1100/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4496/3667
    Facsimile: (213) 894-0141
    E-mail:   Christine.Ro@usdoj.gov
             Ian.Yanniello@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-697-SJO |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S ADMISSION OF FOREIGN DOCUMENTS; DECLARATION OF CHRISTINE M. RO; EXHIBITS |
| v. | |
| DANIEL FLINT, | Trial Date:  October 16, 2018 |
| Defendant. | Trial Time:  9:00 a.m. |
| | Location:   Courtroom of the Hon. S. James Otero |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Christine M. Ro and Ian V. Yanniello, hereby files, pursuant to 18 U.S.C. § 3505(b), its opposition to certain purported foreign records, attached hereto as Exhibit A (collectively, the "Records") that defendant Daniel Flint intends to introduce at trial.  In summary, the Records do not meet the test for admissibility nor do they bear sufficient indicia of reliability or authenticity, such that they, or any of them, should

1  be received in evidence.  Furthermore, beyond the question of whether

2  the Records are admissible or authentic, the Records appear to be

3  irrelevant and subject to exclusion under Federal Rule of Evidence

4  403 as more prejudicial than probative, too confusing, and likely to

5  consume an unreasonable amount of time relative to their value, if

6  any.

7       At a minimum, the government respectfully requests that the

8  Court preclude, in the nature of an in limine ruling, any reference

9  to or mention of the Purported Foreign Records during voir dire,

10  opening statement, or the government's case-in-chief.

11      This opposition is based upon the attached memorandum of points

12  and authorities, the files and records in this case, the attached

13  Declaration of Christine M. Ro and supporting exhibits, and such

14  further evidence and argument as the Court may permit.

15  Dated: October 15, 2018          Respectfully submitted,

16                                   NICOLA T. HANNA
                                     United States Attorney
17
                                     LAWRENCE S. MIDDLETON
18                                   Assistant United States Attorney
                                     Chief, Criminal Division
19

20                                          /s/
                                     _____
21                                   CHRISTINE M. RO
                                     IAN V. YANNIELLO
22                                   Assistant United States Attorneys

23                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

24

25

26

27

28

                                    2

1
<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2
**I.    FACTS**

3
    **A.    Defendant's "Diplomatic Courier Claim" and Documents**

4
    On July 25, 2017, defendant Daniel Flint ("defendant"), an

5
attorney licensed in the states of Michigan and North Carolina,

6
claimed as he boarded a domestic U.S. flight from Chicago to Los

7
Angeles that he was a diplomatic courier so he could avoid the

8
screening requirements and transport to Los Angeles nearly $150,000

9
wrapped in plastic shopping bags that were contained in a larger

10
satchel purporting to be a "diplomatic pouch."  Defendant told TSA

11
officers in Chicago that he was both a "diplomat" and "an attorney"

12
and showed the officers this document:



22
(Dkt. 90-1 at 5.)

23
    Defendant also produced a fraudulent "courier letter" and other

24
documents to support his claim that he was a diplomatic courier.

   **B.   Defendant's Prior Diplomat and "Attorney" Claims At Chicago Airports**

The Court has already ruled that the government may introduce certain facts surrounding defendant's encounters at two Chicago airports days before the charged offense conduct, during which defendant made similar claims of diplomatic immunity while attempting to board a plane with a purported diplomatic pouch. (Dkt. 35)  In one of those encounters, TSA officers refused defendant entry past the TSA checkpoint because TSA officers rejected defendant's proffered purported "diplomatic" documents.  In another of those encounters, defendant actually made it through a TSA checkpoint using similar documents and made his way to a secure area at LAX upon disembarkation in Los Angeles.

   **C.   Defendant's Claims To Be a "Diplomat" and "Attorney" During a Traffic Stop**

Pending before the Court is the government's motion *in limine* to admit at trial certain facts surrounding a traffic stop of defendant that occurred about ten months before the present offense conduct. (Dkt. 78)  Namely, in September 2016, a Michigan State Trooper stopped defendant for driving with an expired registration.  During that stop, defendant claimed that he was an attorney – specifically, a "defense attorney" and a "civil rights attorney for the United States" – and that he could not be arrested because he had "diplomatic immunity."  Defendant did not produce any evidence to support his claims that he was a "civil rights attorney for the United States" or that he had "diplomatic immunity," and defendant was later charged and pleaded guilty to a misdemeanor.

### D.   The Records

On October 2, 2018, the government received from the defense the Records, consisting of 102 pages.  The defense stated that the Records were produced under Fed. R. Crim. P. 16(b)(1)(A) (the general reciprocal discovery rule) and that the defense intends to offer the Records at trial pursuant to 18 U.S.C. § 3505(b).  The defense did not indicate whether the defense intends to introduce the Records in its case-in-chief.

The Records, bates numbered "Flint – 1" through "Flint – 102," are attached as Exhibit A to the Declaration of Christine M. Ro ("Ro Decl.").

The Records begin with a purported "Business Records Affidavit" with the image of a signature for the affiant, Asra Khan, who purportedly signed the document in Islamabad, Pakistan on August 30, 2018.  The affidavit refers to 98 pages of business records that are purportedly "exact duplicates of the original."  (Ro Decl., Exh. A, Flint – 001.)  None of the attached documents, or the affidavit, bears any indicia of authenticity that is common with foreign records, such as an embossed seal, ribbon woven through brass grommets punched through the collective documents, or "wet" or "live" ink cover or container.  Nor was any mailer or other evidence of transmission provided that might contain some evidence about the source of the Records.

The Records contain items purportedly related to the "IHRC Diplomatic Corps," "International Human Rights Commission," "International Human Rights Commission -- Trust Relief Fund," including a notification purporting to appoint defendant as "Legal Counsel & Diplomatic Courier" on October 20, 2016, approximately one

1   month after the traffic stop in Michigan where defendant claimed that

2   he had "diplomatic immunity." (Id. at FLINT_099.)  Also contained

3   within the Records is what appears to be a photocopy of a laminated,

4   "Consular Identification Card" issued by the "United States

5   Department of State" for Robert Shumake as "Honorary Consul" for

6   Botswana/Tanzania. (Id. at FLINT_100.)  That identification card

7   bears the notation, "Location Southfield Michigan." Id.[1]  The

8   Records also contain pages that purport to identify Mr. Shumake as a

9   diplomat of the International Human Rights Commission ("IHRC") as

10  well. (Ro Decl., Flint – 096.)  Finally, of particular relevance

11  here, is a letter that appears to be authentic, from the United

12  Nations, dated April 8, 2016, and granting "consultative status" to

13  the purported entity for which defendant (and Shumake) claim

14  diplomatic privileges. (Id. at FLINT_042-FLINT_047.)  The letter

15  states that "consultative status does not entitle NGO's any

16  privileges such as tax exemptions, diplomatic passports, travel

17  privileges, etc." (Id. at Flint -047 (emphasis added).)

18      There are two additional facts relevant to the present matter.

19  First, the government expects to call at trial during its case-in-

20  chief a representative of the U.S. Department of State about the

21  procedure for obtaining diplomatic courier status and privileges,

22  including that the State Department keeps a database of information

23  related to recognized diplomats, and defendant is not one of those

24  individuals.

25      Second, on October 4, 2018, FBI special agents called the

26  telephone number depicted on the back of the IHRC identification card

27  _____

28      [1]  Defendant Flint's website lists his office as located in
    Southfield, Michigan.  http://www.flint-law.com/ContactMrFlint.html

4

that defendant presented as part of his offense conduct.  The
substance of the call was memorialized in an FBI report of
investigation dated October 10, 2018 that has been produced to the
defense in discovery.  (Ro Decl., Exhibit B.)  As shown in that
report, an individual answered and identified himself as Mr. Muhammad
Shahid Amin Khan and World Chairman of the IHRC.  Mr. Khan identified
an individual named Asra Khan as the Representative for Foreign
Relations for the IHRC.  Mr. Khan stated multiple times that there is
no "IHRC Diplomatic Corps" and that members of IHRC are not
authorized and do not possess passports or diplomatic pouches.  He
further stated that IHRC had "honorary goodwill ambassadors" who do
not have true diplomatic status.  Mr. Khan did appear to know Mr.
Shumake as the Deputy Chairman of the IHRC but noted that Mr. Shumake
does not receive any special benefits for holding that position.  Mr.
Khan stated that he did not know defendant.  Consistent with the
United Nations letter contained within the Records, Mr. Khan stated
that IHRC had "consultative" status (as described in that letter).
Mr. Khan further stated that, while IHRC does solicit donations, the
bank account for those donations was located in Pakistan, IHRC
discourages the transfer of money, and it would be abnormal for
someone in the United States who claimed to work on behalf of IHRC to
be moving hundreds of thousands of dollars at a time.  Mr. Khan
appeared to be aware of certain documents that are purportedly
business records of the IHRC, but he made clear the documents --
contrary to some of the Records produced by the defense -- did not
give the IHRC any legal rights in the United States and did not
impart diplomatic status to any individual.

1  **II.  ARGUMENT**

2  **A.   Applicable Law**

3  18 U.S.C. § 3505(a)(1) provides that, in a criminal case, "a

4  foreign record of regularly conducted activity, or a copy of such

5  record," is excepted from the hearsay rule provided that it meets the

6  test for admissibility similar to that of the business records rule

7  under Fed. R. Evid. 803(6). Specifically, the records may be received

8  if under cover of a "foreign certification" that:

9   (A) such record was made, at or near the time of the occurrence

10   of the matters set forth, by (or from information transmitted

11   by) a person with knowledge of those matters;

12   (B) such record was kept in the course of a regularly conducted

13   business activity;

14   (C) the business activity made such a record as a regular

15   practice; and

16   (D) if such record is not the original, such record is a

17   duplicate of the original,

18   unless the source of information or the method or circumstances

19   of preparation indicate a lack of trustworthiness.

20  18 U.S.C. § 3505(a)(1).  A motion opposing admission in evidence of

21  such records should be made before trial, with such objection to be

22  determined by the Court before trial.  18 U.S.C. § 3505(b).

23  **B.   The Records Do Not Meet the Test For Admissibility**

24  It is clear from the face of the proffered records that they do

25  not show that "the business activity [i.e., IHRC] made such record as

26  a regular practice."  18 U.S.C. § 3505(a)(1).  Specifically, the

27  United Nations letter buried in the middle of the nearly 100 pages

28  appears to have been <u>made</u> not by the IHRC, but by or on behalf of the

6

United Nations.  Mr. Khan's telephonic statements are consistent with that proposition.  Mr. Khan is the one person with the most knowledge about IHRC and he has disputed virtually everything defendant has proffered or suggested might support his defense.  Mr. Khan was adamant that he does not know defendant Flint and that the IHRC does not grant diplomatic courier privileges to its affiliates.[2]  The foregoing indicates that the documents pertaining to defendant Flint that are contained within the Records do not satisfy the test that "the business activity made such a record as a regular practice[.]"

Next, the Records appear to contain a laminated document – pertaining to Robert Shumake – that is consistent with documents prepared by the U.S. Department of State, not by the IHRC. (See _Id._ at FLINT_100.)  Preparation of that document could not have been part of IHRC activity, and Mr. Khan's statements plainly indicate that IHRC does not have the power to grant privileges on behalf of the U.S. Department of State.

###    C.    The Records Are Untrustworthy

Even a cursory examination of the Records raises serious doubts about their trustworthiness.  As noted above, Mr. Khan -- the purported "World Chairman" of the IHRC -- informed the FBI that the IHRC does not issue diplomatic credentials or have diplomatic couriers.  This alone undermines the trustworthiness of the purported diplomatic credentials purporting to grant defendant and Mr. Shumake

---

[2]  The Court may consider the government's proffer of Mr. Khan's telephonic statements because, in connection with the Court's preliminary examination regarding the admissibility of evidence under Fed. R. Crim. P. 104(a), the rules of evidence do not apply. ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege.")  See also Fed. R. Evid. 1101(d)(1).

1   protections under "the international protocols & status recognized by

2   Vienna Convention."   (See Id. at FLINT_095-FLINT_099.)

3        Additionally, some of the documents raise questions about

4   whether they are forgeries rather than official business records.

5   For example, Mr. Shumake was purportedly issued "Diplomatic Identity

6   Card: HQ-A02010/16" on May 5, 2015.  (Id. at FLINT_095.)  The Records

7   also contain a full-page image of card "HQ-A02010/16," which

8   references that the IHRC has "Special Consultative Status with UN

9   ECOSOC."  (Id. at FLINT_096.)  However, as noted above, the United

10  Nations document that purports to "grant special consultative status"

11  to the IHRC is dated April 8, 2016, see Id. at FLINT_042 -- nearly a

12  year after Shumake's identification card was allegedly manufactured.

13       Notably, the government originally received many of the

14  documents that defendant now contends are IHRC "business records"

15  from Mr. Shumake's civil attorney in the forfeiture action pending

16  before this Court.  (See Ro Decl., Ex. C at 2 (stipulation listing 14

17  documents provided to the government).)  Although not included in the

18  Records, Shumake's attorney provided the government with other

19  documents that relate to this motion.  For example, Mr. Shumake's

20  counsel produced "USA Donation Receipt" letters from Mr. Shumake that

21  purport to thank donors for their "very generous donation[s]" of

22  $40,000-50,000 in cash.  (See Ro Decl., Ex. D.)  These documents are

23  dated in June 2017 -- a month before the charged conduct in this case

24  -- but the letterhead, business address, and website address noted on

25  these documents conflicts with the information listed on the courier

26  letters Flint used in July 2017.  (Compare Ex. D with Ex. E (July 24,

27  2017 courier letter).)  These documents, too, raise serious concerns

28  about the trustworthiness of the Records as a whole.

Other documents portions of pages that are obstructed or missing, see Id. at FLINT_027-FLINT_041, and still others have portions with font sizes much smaller than the remaining document, see Id. at FLINT_010 (compare "TRAVEL DOCUMENTS (PASSPORT)" with other headings).

Further, unlike foreign records that might typically be introduced, the mere copies without any authentic originals to inspect are simply insufficient to conclude that they are based on genuine documents.  There are no seals, ribbons, or other indicia of genuineness evident on the copies.

### D.   The Records Are Irrelevant and Inadmissible under Federal Rules of Evidence 402 and 403

Beyond the foundation issues, the Records are irrelevant. Because the Records have been proffered as part of an affirmative defense or as part of the defendant's case-in-chief, the defense should be required to proffer a linkage between the Records and some aspect of the defense or the negation of an element of the charged offense.  Even if the defense were to proffer that defendant will testify, there should be some showing, before he does so and before the Records are mentioned at all, that a specific record informed his state of mind on which he asserted his claim of diplomatic immunity.

Next, the Records are confusing, difficult to understand, and will take a substantial amount of time for even the proffering party to explain to a jury, such that they are substantially more prejudicial than probative.  This is particularly so given the FBI's phone call with Mr. Khan (the purported affiant certifying the Records), suggesting that many (if not all) of the documents are

illegitimate and thus not fairly encompassed by the business records exception.

**III.    CONCLUSION**

For the foregoing reasons, the government respectfully opposes the admission of the Records in evidence and requests that the Records be excluded.