UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CR 17-00697 SJO | Date | May 14, 2019 |

Present: The Honorable   S. James Otero

Interpreter   Not Required

| Victor Paul Cruz | Not Present | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Daniel Flint | xx | xx | | Georgina Wakefield | xx | xx | |

**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL** [Docket No. 140]

This matter is before the Court on Defendant Daniel Flint's ("Defendant") Motion for Judgment of Acquittal, filed on March 4, 2019 ("Motion"). Plaintiff United States of America (the "Government") opposed the Motion on March 26, 2018 ("Opposition"). The Court found this matter suitable for disposition without oral argument and vacated the hearing set for April 29, 2019. *See* Fed. R. Civ. P. 78(b). For the following reasons, Defendant's Motion for Judgment of Acquittal is **DENIED**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

    A.   Factual Background

On July 20, 2017 Defendant presented himself as a diplomat with the International Human Rights Commission ("IHRC") to a Transportation Security Administration ("TSA") official at Chicago O'Hare International Airport ("O'Hare"). (Mot. 2, ECF No. 140.) Defendant, intending to board a flight to Los Angeles International Airport ("LAX"), insisted his carry-on luggage was exempt from screening under the "Laws of the Geneva Convention" and presented an IHRC "Diplomatic Identification Card." (Mot. 2-3.) TSA officials at O'Hare told Defendant that his credentials were insufficient to pass through security and that he was required to present a valid diplomatic passport in order to be exempt from screening. (Opp'n. 6-7, ECF No. 147; Mot. 3.) After TSA informed Defendant that his documents were insufficient to exempt his baggage from inspection, he declined to submit his baggage to screening and did not board a flight. (Compl. ¶ 9, ECF No. 1.)

Later that same day, Defendant cancelled his flight out of O'Hare and booked a new flight from Chicago Midway International Airport ("Midway") to LAX for that same afternoon. (Mot. 3.) This flight included a connecting flight at Minneapolis-St. Paul International Airport ("MSP") before making its final arrival to LAX. (Mot. 3.) Defendant again presented himself as an IHRC diplomat to TSA at Midway. (Opp'n. 8-9.) Midway TSA officials permitted Defendant to travel without submitting his baggage for TSA screening. (Comp. ¶ 10.) On July 25, 2017, Defendant again presented himself as a diplomat with the IHRC to Midway's TSA for a flight to MSP, with a later connecting flight to LAX. (Mot. 4.) TSA officials accepted Defendant's representation, and he was allowed to travel without submitting his baggage for TSA security screening. (Mot. 4-5.) TSA officials at Midway

|  | Priority |  |
|---|---|---|
|  | Send |  |
| Enter |  |  |
|  | Closed |  |
| JS-5/JS-6 |  |  |
| Scan Only |  |  |

**CASE NO.:** **CR 2:17-00697 SJO-1** **DATE:** **May 14, 2019**

subsequently discovered that Defendant had not provided the correct credentials to be exempt from screening. (Opp'n. 10-11.) While Defendant was en route to LAX, TSA officials reported the incident to FBI and law enforcement officials. (Mot. 4-5; Compl. ¶ 11.)

FBI agents and other law enforcement officers arrived at Defendant's boarding gate approximately 15-20 minutes before his flight landed at LAX. (Mot. 5; Opp'n. 11.) Once the plane arrived at the terminal, an air marshal and another law enforcement officer boarded the plane to escort Defendant off the flight. (Mot. 5; Opp'n. 11.) Defendant cooperated with authorities and was observed "walking on his own accord" and "not fighting anyone." (Opp'n. 11; Reporter's Transcript of Trial Proceedings Day 2 ("RT2") 378, ECF No.118.) After the authorities escorted Defendant to an interview room inside of LAX, the FBI conducted an interview with him for approximately two hours. (Mot. 6.) Defendant was cooperative throughout the interview and continued to assert that he was a bonafide diplomat. (Mot. 6; Opp'n. 11-12.) Defendant presented the same credentials and documents to the interviewing agents and falsely told agents that he had never been turned away from a screening checkpoint while attempting to travel with his diplomatic pouch. (Mot. 6-7; Opp'n. 12-13.)

The agents ultimately conducted a search of Defendant's bag and discovered approximately $148,145 in U.S. currency stuffed inside plastic shopping bags. (Compl. ¶ 14.) Agents from the United States Department of State later confirmed that Defendant has no diplomatic status with the Department's Office of Foreign Missions ("OFM") and that the alleged ambassador Defendant claimed to be working for was not a recognized ambassador for any organization. (Comp. ¶ 17.)

B.   Procedural Background

1.   Defendant's Jury Trial

On November 7, 2017, Flint was indicted on one count for entering an airport area in violation of security requirements under 49 U.S.C. §§ 46314(a), (b)(2). (*See generally* Indictment, ECF No. 15.)

Defendant Flint's three-day jury trial began on October 16, 2018. (*See generally* Reporter's Transcript of Trial Proceedings Trial Day 1 ("RT1"), ECF No. 117.) On October 17, 2018, following the close of the government's case-in-chief, Defendant orally moved for a judgment of acquittal under Rule 29 of the Federal Rules of Civil Procedure. (*See* RT2 400-01.)

In his motion, Defendant argued that: (1) venue was improper; (2) the government failed to establish that he voluntarily entered Terminal 3 at LAX; (3) the government failed to prove that he violated LAX's security requirements; (4) the security requirements at issue are "secret" and cannot form the basis of a conviction; and (5) the government failed to present evidence regarding whether his bag was screened during his layover at MSP. (*See* RT2 400-03.) Plaintiff filed a written opposition to Defendant's oral motion on October 18, 2018. (*See* ECF No. 107.) The Court subsequently denied Defendant's pre-verdict motion for a judgment of acquittal on October 18, 2019. (*See* Reporter's Transcript of Trial Proceedings Trial Day 3 ("RT3") 495, ECF No. 119.)

The Court delivered the following jury instructions as to the elements that the government must prove beyond a reasonable doubt to sustain a conviction under 49 U.S.C. §§ 46314(a), (b)(2):

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.:     CR 2:17-00697 SJO-1                    DATE: May 14, 2019

(1)     the defendant entered an airport area that serves as an air carrier, namely, the sterile area of
        Terminal 3 at Los Angeles International Airport;

(2)     the defendant did so in violation of security requirements and regulations prescribed under
        sections 44901, 44903(c) of Title 49 of the United States Code[1]; and

(3)     the defendant acted knowingly and willfully; and

(4)     the defendant also acted with the intent to evade the security regulation.

(*See* Jury Instruction No. 14, ECF No. 131; RT3 445-48.)

The jury was instructed that the term "sterile area" is defined as meaning a "portion of an airport where passengers
have access to boarding aircraft and to which the access generally is controlled by the Transportation Security
Administration; an aircraft operator through the screening of persons and property." (*See* Jury Instruction No. 13.)
For a diplomatic pouch to be exempt from security screening at TSA, the diplomatic courier "must possess and
present to TSA a valid diplomatic passport ... a courier letter ... and a diplomatic pouch ...[.]" (*Id.*) "Individuals
who are not diplomatic couriers and who do not possess valid diplomatic documentation must submit their items
for screening and inspection **before entering the sterile area of an airport**." (RT3 at 447.)

On October 19, 2018, the jury found Defendant Daniel Flint guilty of intentionally evading airport security
requirements, in violation of 49 U.S.C. §§ 46314(a), (b)(2). (*See generally* Reporter's Transcript of Trial
Proceedings Trial Day 4 ("RT4"), ECF No. 120.)

---

[1]  The jury was also instructed that 49 U.S.C. § 44901 ("Section 44901") grants the head of the TSA (the
"Administrator") the authority to enact security requirements which "provide for the screening of all passengers and
property, including United States mail, cargo, carry-on, and checked baggage, and other articles that will be carried
aboard a passenger aircraft operated by an air carrier ... in air transportation or intrastate air transportation." 49
U.S.C. § 44901(a).  Similarly, 49 U.S.C. § 44903(c) ("Section 44903(c)") states that the Administrator shall
prescribe regulations which require airport operators to "establish an air transportation security program that ... is
adequate to ensure the safety of passengers." 49 U.S.C. § 44903(c).  The relevant federal airport security
regulations and requirements prescribed under these enabling statutes were stated as follows:

        The federal regulations and security requirements prohibit any person from entering a sterile area
        of an airport or boarding an aircraft without submitting to screening and inspection of his or her
        person and accessible property; circumventing or attempting to circumvent any security system,
        measure, or procedure implemented to protect passengers and property on an aircraft; and/or
        entering a sterile area without complying with the procedures being applied to the area. (*See* Jury
        Instruction No. 13; RT3 445.)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Priority | | |
| Send | | ___ |
| Enter | | |
| Closed | | ___ |
| JS-5/JS-6 | | ___ |
| Scan Only | | ___ |

CASE NO.:    **CR 2:17-00697 SJO-1**              **DATE:** May 14, 2019

2.    <u>The Instant Motion</u>

Defendant moves for the Court to set aside the jury verdict and enter an acquittal, claiming the evidence presented at trial is insufficient to sustain a conviction under 49 U.S.C. §§ 46314(a) and (b)(2).  (*See generally* Mot.) Defendant presents the following arguments:

(1)    The charging statute, 49 U.S.C. § 46314 ("Section 46314"), only criminalizes an individual's "initial entry" into a sterile area, and because his "initial entry" occurred at Midway, he cannot be convicted for violating the statute at LAX;

(2)    The Government failed to meet its evidentiary burden by not presenting evidence as to whether or not Defendant was screened during his layover at MSP;

(3)    The Government failed to present sufficient evidence to prove Defendant knowingly and willfully entered a sterile area of Terminal 3 at LAX; and

(4)    The evidence is insufficient to show Defendant violated a specific security requirement prescribed under Sections 44901 or 44903(c) to sustain a conviction under Section 46314.  Specifically, Defendant contends that his conviction was improperly based upon a violation of "secret" TSA standard operating procedures ("SOPs").

The Court addresses Defendant's arguments in turn.

II.    <u>DISCUSSION</u>

A.    <u>Legal Standard</u>

Rule 29 provides that "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). Pursuant to Rule 29(a), "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A motion for judgment of acquittal is reviewed on a sufficiency-of-the-evidence standard." *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir.2010) (quoting *United States v. Stoddard*, 150 F.3d 1140, 1144 (9th Cir.1998)). "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow '**any** rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

"[A]ll reasonable inferences are to be drawn in favor of the government, and any conflicts in the evidence are to be resolved in favor of the jury's verdict." *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201-02 (9th Cir. 2000) (citing *United States v. Laykin*, 886 F.2d 1534, 1539 (9th Cir. 1989)). We "respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | Priority ___ |
|---|---|---|
| | Send | |
| Enter | | Closed ___ |
| JS-5/JS-6 | | |
| Scan Only | | |

CASE NO.:    CR 2:17-00697 SJO-1                    DATE: May 14, 2019

from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." *United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir.1987) (citations omitted).  "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high."  *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010).

    B.    <u>Analysis</u>

        1.    <u>The Scope of Section 46314(a) Is Not Limited To Defendant's Initial Entry Into a Sterile Area at Midway</u>

49 U.S.C. 46314(a) ("Section 46314(a)") states that "[a] person may not knowingly and willfully enter, in violation of security requirements prescribed under section 44901, 44903(b) or (c), or 44906 of this title, an aircraft or an airport area that serves an air carrier or foreign air carrier." 49 U.S.C. § 46314(a).  In the instant case, Defendant was convicted under Section 46314(a) for violating security requirements prescribed under Sections 44901 and 44903(c).  (*See* Indictment; Jury Instruction No. 14.)  Sections 44901 and 44903(c) are enabling statutes which, among other things, grant the Administrator the authority to prescribe regulations that provide for the screening of all passengers and property that will be carried aboard an aircraft.  *See* 49 U.S.C. §§ 44901, 44903(c).  Pursuant to this authority, the TSA has promulgated "a blanket regulation **barring any person from entering the so-called 'sterile-area' of an airport** ... 'without complying with the systems, measures, or procedures being applied to control access to, or presence or movement in, such area [ ].'"  *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 3 (D.C. Cir. 2011) (*quoting* 49 C.F.R. § 1540.105(a)(2)).

Defendant argues that, although he was convicted of intentionally entering a sterile area at Terminal 3 of LAX, "nothing in the plain language of  § 46314(a) ... reflects Congress's intent to criminalize anything other than the **initial** entry into a sterile area after the purported security violation." (Mot. 11) (emphasis in original).  Thus, Defendant argues that he cannot be convicted of violating Section 43614(a) for anything other than his initial entry into a sterile area—in this case, his initial entry into a sterile area of Midway on July 20, 2017. (*Id.* at 10-11.)  The Government contends that, regardless of his initial entry into a sterile area at Midway, Defendant's action of "bringing the unscreened bag into Terminal 3 of LAX" constituted a separate violation of Section 46314(a) since "where the plane parked, the boarding ramp, and the interior of the terminal are [all] 'sterile' areas of Terminal 3 at LAX." (Opp'n. 21-22.)  The Court agrees.

The Court finds nothing in the plain language of Section 46314(a) to support Defendant's interpretation. (Mot. 10-11.)  Undisputed evidence presented at trial established that the airfield, the aircraft, where the aircraft parked, the boarding ramp, and the interior of the terminal were all "sterile" areas of Terminal 3 at LAX. (*See, e.g.,* RT2 296-98) ("[T]he sterile area does include the airfield and the aircraft[.] ... [W]hen you arrive at your destination airport, the jet bridge, and the area you walk into is still sterile.").  The plain language of Section 46314(a) prohibits an individual from knowingly and willfully entering an airport area in violation of security requirements, which **include** those imposed by the TSA that define certain "airport area[s]" as "sterile areas." *See* 49 C.F.R. § 1540.105(a)(2).  Neither Section 46314(a) nor the applicable TSA regulations specify that "entry" into a sterile area may occur **only once**.  Instead, as Plaintiff points out, Defendant's entry into a sterile area at Midway Airport with an unscreened bag **and** his subsequent entry into a sterile area at LAX with the **same unscreened bag** are all entries in violation of Section 46314(a).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | Priority | |
| --- | --- | --- |
| | Send | ___ |
| Enter | | |
| | Closed | ___ |
| JS-5/JS-6 | | |
| Scan Only | | |

CASE NO.: __CR 2:17-00697 SJO-1__          DATE:_ May 14, 2019 _

In sum, the Court concludes that the plain language of Section 46314(a) prohibits **all** entries into sterile areas at airports that are in violation of the prescribed security requirements, regardless of the location of the individual's purported "initial entry." Accordingly, Defendant was properly charged under Section 46314(a) for entering a sterile area of Terminal 3 at LAX in violation of the prescribed security requirements promulgated under Sections 44901 and 44903(c).

### 2.      The Government Satisfied Its Evidentiary Burden at Trial

Defendant argues that the Government failed to prove that Defendant's pouch had not been screened at during his layover at MSP prior to his final arrival at LAX and as such, it cannot be said that he evaded security screening procedures before arriving at LAX on July 25, 2017. (Mot. 11-16.) He asserts that it was "the [G]overnment's burden to prove" that "[Defendant did not go] through screening at MSP" to show that he violated security requirements when he entered a sterile area at **LAX.** (*Id.*) In other words, Defendant argues that because the Government presented "no evidence whatsoever" regarding Defendant's layover at MSP following his departure from Midway, there is "no chain of logic" which would permit the reasonable inference that Defendant entered Terminal 3 of LAX with an unscreened bag. (*Id.* at 12.) The Court previously rejected this argument at Defendant's trial, and the Court rejects this argument once again. (*See* RT3 493-95.)

The Government was not **required** to present direct evidence as to the events that occurred at MSP during Defendant's layover in order to meet its evidentiary burden. It is well-established that the Government "**does not need to rebut all reasonable interpretations of the evidence** that would establish the [D]efendant's innocence, or 'rule out every hypothesis except that of guilt beyond a reasonable doubt[.]'" *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 326). Instead, the Government meets it evidentiary burden at trial by presenting sufficient evidence to prove each of the "**essential elements**" beyond a reasonable doubt. *See id.*

Applying this standard to the instant case, the Government was required to prove each of the following elements beyond a reasonable doubt to sustain a conviction:

(1)      Defendant entered an airport area that serves an air carrier, namely a sterile area of Terminal 3 at LAX;

(2)      Defendant did so in violation of security requirements and regulations prescribed under Sections 44901 and 44903(c) of Title 49 of the United States Code;

(3)      Defendant acted knowingly and willfully; and

(4)      Defendant also acted with the intent to evade the security regulation.

(*See* Jury Instruction No. 14.)

Contrary to Defendant's contention that "no evidence whatsoever" was offered in relation to the layover at MSP, there is ample circumstantial evidence in the trial record to support the inference that Defendant's layover at MSP did not affect the "unscreened" nature of the bag he ultimately carried into LAX. *See United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir. 1994) ("Circumstantial evidence can be used to prove any fact, although mere suspicion

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.:   CR 2:17-00697 SJO-1                    DATE: May 14, 2019

or speculation does not rise to the level of sufficient evidence.") (internal quotations and citation omitted); *see U.S. v. Yoshida*, 303 F.3d 1145, 1150 (9th Cir. 2002) ("Circumstantial evidence can form the basis of a conviction."). The evidence presented at trial established that Defendant used fraudulent diplomatic credentials to pass through a TSA security checkpoint with an unscreened bag at Midway for the purpose of boarding a morning flight from Midway to LAX.  (Opp. 20; RT2 252-53.)  While Defendant was on board his final flight to LAX, TSA officials at Midway contacted the FBI to inform them that Defendant was carrying an "unscreened" bag on his flight.  (RT2 228, 336.)  Defendant subsequently landed at LAX with the bag in his possession and, based upon witness testimony, entered certain "sterile" areas of Terminal 3.  (RT2 290-98, 336-37.)  The jury also heard audio excerpts from Defendant's interview with FBI authorities following his apprehension at LAX, in which he repeatedly stated that he was a bonafide diplomat and had never been stopped at a TSA checkpoint before.  (RT2 379.)  The agents testified that Defendant's pouch was secured with a lock and unable to be opened without a key.  (RT2 340-41.)  During the interview, the agents allowed Defendant to call the purported ambassador for whom he claimed to work for on the phone to "provide authorization" for the bag to be searched before he retrieved the key.  (RT2 375-76.)

On balance, the Court finds that circumstantial evidence was sufficient to permit the jury to reasonably infer that Defendant arrived at LAX with an unscreened bag. Viewing the trial record as a whole in the light "most favorable to the government," the Court finds that the jury "drew **reasonable** inferences from proven facts... **in a manner which supports the verdict.**"  *U.S. v. Ramos*, 558 F.2d 545, 546 (9th Cir. 1977).

Thus, Defendant's arguments disputing the evidence presented regarding the layover at MSP fail to justify acquittal.

3.    The Evidence Is Sufficient To Prove Defendant Willfully And Knowingly Entered a Sterile Area of Terminal 3 at LAX In Violation of Section 43614(a)

Defendant reasserts many of the same arguments this Court previously rejected in its denial of his pre-verdict motion. (Mot. 15-17; RT2 403.)  In the instant Motion, Defendant argues that there was insufficient evidence to prove he knowingly and willfully entered a sterile area of Terminal 3 at LAX.  (Mot. 15-17.)

Specifically, Defendant contends that his entry into a sterile area at LAX was not "voluntary" because the law enforcement officials who escorted him off the plane "controlled his movements." (Mot. 15-16.) Second, he argues that there was insufficient evidence to show he "knowingly" entered a sterile area of Terminal 3 because he was not adequately informed that the area he was entering was considered "sterile." (Mot. 16-17.) The Court addresses Defendant's knowledge and willfulness in turn.

a.    Defendant Knowingly Entered a Sterile Area of Terminal 3 at LAX

Defendant further argues that, even if the evidence was sufficient to show that he voluntarily entered a sterile area of Terminal 3, the government still failed to prove he did so **knowingly**.  (Mot. 16; *see* Jury Instruction No. 14, ECF

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Priority | |
|---|---|
| Send | |
| Enter | |
| Closed | |
| JS-5/JS-6 | |
| Scan Only | |

CASE NO.:    **CR 2:17-00697 SJO-1**                DATE: May 14, 2019

No. 131.) Defendant argues that the Government "did not present any evidence that signs or anything else informed Flint that he was entering a sterile area when he exited the plane into Terminal 3." (Mot. 17.) The Court disagrees.

First, a violation of Section 46314 **does not** require that signs inform a defendant of sterile areas in an airport in order to show they "knowingly" entered. In fact, Section 46314(c)(2) explicitly states that the absence of posted signs near a sterile area does not preclude conviction: "An individual shall be subject to a penalty imposed under ... [Section 46314(b)] without regard to whether signs are displayed at an airport as required by paragraph (1)." *See* 49 U.S.C.A. § 46314(c)(2). Moreover, nowhere does the statute include a requirement that any other type of display or TSA regulation affirmatively inform a defendant as to the location of sterile areas. (*Id.*) Instead, the relevant inquiry considers whether there was sufficient evidence proving beyond a reasonable doubt that Defendant was aware that he was entering a sterile area and did not enter the area "by mistake, ignorance, or accident," without regard to whether he was **explicitly** "informed" as to whether the areas were sterile.[2] (*See* Jury Instruction No. 14.)

Viewing the trial record as a whole, the Court finds the evidence sufficient to permit the jury to reasonably conclude that Defendant did not enter a sterile area of Terminal 3 at LAX by mistake, ignorance, or accident. (*See* Jury Instruction No. 14, ECF No. 131.) Defendant first attempted to pass through a TSA security checkpoint at O'Hare with a fraudulent diplomatic identification card, courier letter, and a "diplomatic pouch." (RT1 139-48, 183.) At O'Hare, TSA officials specifically informed Defendant that he needed a diplomatic passport in order to be exempt from screening, and that **every national TSA has the "same SOP"** outlining this requirement. (RT1 143-44.) After he was rejected from O'Hare, Defendant booked a new flight from Midway to LAX on the same afternoon. (RT1 190-92.) Still lacking a diplomatic passport, Defendant presented the same fraudulent ID, documents, and pouch to TSA officials at Midway, but this time was able to successfully evade screening. (RT1 192-94.) Five days later, Defendant again passed through a TSA security checkpoint at Midway using the same fraudulent diplomatic credentials in order to board a flight from Midway to LAX, the final events of which are at issue in this case. (*See generally* RT2 242-53.) These facts indicate that Defendant had knowledge that his allegedly diplomatic pouch was deficient, and he continued to attempt to use it and evade security anyway.

Thus, the Court rejects Defendant's argument that he did not knowingly enter a sterile area of terminal 3 at LAX.

       b.      <u>Defendant Willfully Entered a Sterile Area at Terminal 3 of LAX</u>

For the purposes of this element, Defendant's entry into a sterile area of Terminal 3 was only "willful" if the Government proves that it was voluntary or, in other words, the "product of a voluntary act." (*See* Jury Instruction No. 15, ECF No. 131.); *see, e.g., United States v. Kiss–Velasquez*, 2010 WL 11545250, at *8 (C.D. Cal. 2010)

---

[2] Defendant does not dispute the details of the jury instruction given as to this element during trial. The instruction stated the following: "**An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident**. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly." (Jury Instruction No. 15, ECF No. 131.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:**   **CR 2:17-00697 SJO-1**                    **DATE:** May 14, 2019

(using the same language to define the intent element where a defendant's reentry into the United States from outside the country's borders must be "knowing" and "voluntary").

At trial, Michael Duretto, the assistant federal security director for security operations at LAX, testified as to the exact location of the "sterile areas" of Terminal 3.  (*See* RT2 290-298.)  With regard to passengers in an airplane landing at LAX, the sterile areas of Terminal 3 include "**the airfield itself where the planes taxi**,"[3] and "**when [passengers] deplane, the aircraft, the jet bridge, and the area [passengers] walk into[.]**"  (RT2 296-97.)  In sum, the Government presented undisputed evidence that Defendant voluntarily boarded a plane at Midway on July 25, 2017 with the purpose of landing at LAX, and on that same date, Defendant was on a plane that landed at the airfield of Terminal 3 of LAX (a sterile area).  (Opp. 19.)  Defendant does not dispute these events, but instead claims that officers "jumped the gun" and "controlled his movements" by requiring him to get off the plane to escort him into the terminal.  (Mot. 15-16.)  However, as the Court pointed out in its denial of Defendant's pre-verdict motion, the jury could have made the reasonable inference that Defendant entered a sterile area of Terminal 3 at LAX **while he was aboard the airplane when it landed**, since the entire airfield at Terminal 3 is sterile.  (*See* RT2 404; RT2 296-97.)  Specifically, a juror could reasonably find that Defendant's entrance onto the Terminal 3 airfield via airplane was a product of a voluntary act—his knowing and willful entry onto an airplane at Midway for the purpose of landing at LAX.  *See also United States v. Londono-Villa*, 930 F.2d 994, 1000 (2d. Cir.1991) ("[W]hen a person carrying drugs voluntarily traveled on a plane that was scheduled to stop in the United States, we see no reason why a jury may not infer that he or she knowingly or intentionally entered the United States with drugs").  Further, the jury also heard testimony from a witness inside the gate area who "observed [Defendant] walking off the aircraft [ ] ... walking on his own accord.  No one was forcing him, and he was not fighting anyone."  (*See* RT2 378, 386.)

On balance, viewing the evidence in the light most favorable to the Government, the Court finds sufficient evidence to support a finding that the airplane's initial landing onto the tarmac constituted Defendant's willful entry into a sterile area of Terminal 3.

c.    Conclusion

A rational trier of fact could have found that Defendant knowingly and willfully entered a sterile area of Terminal 3.  Accordingly, the Court finds that Defendant's argument fails to justify acquittal.

---

[3] Duretto made clear that the airfield Defendant's plane landed on was a sterile area of Terminal 3, marked in **blue** on a map of Terminal 3 at LAX: "So there's a couple different colorations on this particular map.  The purple area would constitute what we call the security checkpoint screening area.  So the front part of that would be nonsterile.  That's where passengers should get in line to proceed through the security checkpoint.  And ultimately, this more pinkish area, **as well as the blue area, would be what we call sterile**."  (RT 296; *see* Ex. 45, ECF No. 140-20; Opp'n. 18, fn 5.)

UNITED STATES DISTRICT COURT
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.:    CR 2:17-00697 SJO-1                    DATE: May 14, 2019

---

4.    <u>The Evidence Is Sufficient To Prove Defendant Intended to Evade Security Procedures In Violation of Section 46314(b)(2)</u>

Defendant similarly argues that there was insufficient evidence to support his conviction under Section 46314(b)(2) because the government failed to prove that he violated the statute with the requisite intent to evade security procedures. The Court disagrees.

Here, the government likewise presented substantial evidence to permit the jury to reasonably conclude that Defendant purposely evaded security requirements at LAX in violation of Section 46314(b)(2). As established, there was sufficient evidence to conclude that Defendant willingly and knowingly entered a sterile area of Terminal 3 at LAX. Moreover, a jury could reasonably conclude that Defendant acted with the intent to evade TSA security requirements at LAX in light of the evidence showing that he had provided TSA fraudulent diplomatic credentials **on three separate occasions** for the purpose of evading a proper screening in order to transport the contents of an unscreened "diplomatic pouch" from Chicago to LAX**.** The evidence further establishes that Defendant had repeatedly relied on these defective documents to support his purported "diplomatic status" even after he was told the documents were deficient. (*See* Opp. 24.)

On balance, any rational trier of fact could have reasonably concluded that Defendant intentionally violated security requirements at LAX in order to transport the contents of his bag through the airport without submitting to proper screening. Thus, the evidence presented at trial is sufficient to support Defendant's conviction under Section 43614(b)(2).

5.    <u>The Evidence Is Sufficient To Prove Defendant's Entry Was In Violation of Prescribed Security Requirements Under Section 46314(a)</u>

Defendant makes several arguments to support his claim that there was insufficient evidence to prove he "violated a particular regulation covered by the charging statute." (*See generally* Mot. 17-22.) The Court addresses Defendant's arguments in turn.

a.    <u>TSA Security Requirements are Within the Scope of Section 46314</u>

First, Defendant claims that the government failed to show that any security requirements he purportedly violated were "prescribed under" Sections 44901 or 44903(c) or were "within the scope" of violations actionable under Section 46314. (Mot. 18-19.) The Court disagrees.

The statute under which Defendant was convicted provides: "[a] person may not knowingly and willfully enter, **in violation of security requirements prescribed under section 44901, 44903(b) or (c), or 44906 of this title**, an aircraft or an airport area that serves an air carrier or foreign air carrier." 49 U.S.C. § 46314(a). As required by statute, the head of the TSA, referred to as "the Administrator," is "responsible for day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation under sections 44901 and 44935 [ ]." 49 U.S.C. §§ 114(b)(1) & (e)(1). **Under Section 44901(a), the [Administrator] shall "provide for the screening of all passengers and property ... that will be carried aboard a passenger aircraft...."** 49 U.S.C. § 44901(a). Pursuant to this authority, the TSA has created and implemented numerous regulations which, at a

---

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**   **CR 2:17-00697 SJO-1**                    **DATE:** May 14, 2019

minimum, forbid passengers from entering a sterile area or airplane without submitting to the screening of his or her person and accessible property. *See Elec. Privacy Info. Ctr.*, 653 F.3d at 3 ("[TSA] has promulgated **a blanket regulation** barring any person from entering the so-called 'sterile area' of an airport[ ] ... 'without complying with the systems, measures, or procedures being applied to control access to, or presence or movement in, such area[ ].'") (quoting 49 C.F.R. § 1540.105(a)(2)). *See* 49 C.F.R. § 1540.107(a) ("No individual may enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person and accessible property in accordance with the procedures being applied to control access to that area or aircraft...); 49 C.F.R. § 1540.105(a)(1) (provides that "no person may ... interfere with ... [or] attempt to circumvent ... any security system, measure, or procedure implemented under this subchapter."); 49 C.F.R. § 1540.105(a)(2) (prohibits any person from being "present within a secure area ... or sterile area without complying with the systems, measures, or procedures being applied to control access to, or presence or movement in, such areas").[4]

In sum, a plain reading of Section 46314(a) indicates that an entry in violation of the regulations outlined above, which are created and implemented by the TSA pursuant to its authority granted under Section 44901(a), would constitute a "violation of security requirements prescribed under section 44901 ... of this title." 49 U.S.C. § 46314(a). Thus, Defendant's indictment and conviction were properly based upon violations of security requirements that fall within the scope of Section 46314.

The Court now turns to the sufficiency of the evidence presented at trial to prove a violation of the prescribed security requirements.

      b.    <u>The Evidence Is Sufficient to Show Defendant Violated Section 46314(a)</u>

At trial, the Government provided evidence showing that Defendant failed to submit to **any** screening or inspection of his bag pursuant to TSA security requirements because he used fraudulent diplomatic credentials to evade such screening and subsequently entered a sterile area of Terminal 3 at LAX with an unscreened bag. (*See generally* Opp'n.) At a minimum, the evidence shows that Defendant violated the "blanket regulation" prescribed by the TSA pursuant to its authority under Section 44901(a) that bars anyone from entering the sterile area of an airport carrying "accessible property" that has not been screened or inspected by TSA. *See Elec. Privacy Info. Ctr.*, 653 F.3d at 3; 49 C.F.R. § 1540.107(a).

Thus, the Court concludes that **any** rational trier of fact could reasonably find that Defendant violated the charging statute when he provided fraudulent diplomatic credentials to TSA officials to avoid inspection, since doing so would **not** constitute a proper screening under the plain text of the TSA regulations that fall within the scope of Section 46314. *See* 49 U.S.C.A. § 44901(a) ("The [head of the TSA] shall provide for the screening of all passengers and property ... that will be carried aboard a passenger aircraft[.]"); 49 U.S.C.A. § 46314(a) ("in violation of security requirements prescribed under section 44901...").

      c.    <u>The Evidence Is Sufficient to Show Defendant Violated Specific TSA Screening Procedures in Place at LAX</u>

---

[4]  All three of these official TSA regulations were incorporated into Jury Instruction No. 13. (*See* ECF No. 131.)

Priority ___
Send ___
Enter
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:**   <u>CR 2:17-00697 SJO-1</u>                **DATE:** <u>May 14, 2019</u>

Nonetheless, Defendant argues that the government still failed to show specific violations of the TSA regulations that fall within the scope of the charging statute.  To support his claim, he emphasizes the text of 49 C.F.R. § 1540.107(a), which states that individuals must submit to screening prior to entering a sterile area "*in accordance with the procedures being applied to control access to that area or aircraft under this subchapter*."  (Mot. 18.) (emphasis in original).  Defendant asserts that "none" of the cited TSA regulations "actually identify the procedures or security systems in place" to control access to these sterile areas, and the government was required, and failed, to show Defendant was not screened "in accordance with" a specific procedure.  (*Id.* at 18-19.)  The Court disagrees.

At trial, TSA officials provided testimony in which they described the specific screening measures in place at LAX, in addition to those found in TSA's national standard operating procedures ("SOPs").  (*See generally* RT2 293-319.) According to this testimony, TSA procedures in place at **all** national and international airports nationwide—including LAX—mandate the following: "Anybody that's wishing to travel or enter the airport area, the nonpublic side of the airport, is required to undergo ... [one] hundred percent screening on all persons and all property."  (*See* RT2 293-95.)  As to the screening of diplomatic pouches, the assistant federal security director for security operations at LAX testified that a purported "diplomatic pouch" was prohibited from entering a sterile area **without being screened via X-ray and/or subject to a property search of its contents** unless the individual had a valid diplomatic passport, pouch, courier letter, and credentials that met certain requirements.  (RT2 294, 298-301.)  Further, Defendant does not dispute the overwhelming evidence showing that Defendant's diplomatic credentials were fraudulent and failed to meet security requirements.  (*See* Mot.)

On balance, the Court finds that the testimony provided at trial and the plain text of the prescribed regulations constitute sufficient evidence showing that Defendant violated security requirements under Section 46314(a).

> d.    <u>Defendant's Conviction Was Improperly Based Upon Violations of "Secret" TSA Standard Operating Procedures</u>

Finally, Defendant argues that his conviction was impermissibly based upon violations of "secret" and "unpublished" SOPs.  (Mot. 19.)  He claims that a violation of these unpublished SOPs cannot form the basis of a conviction under Section 46314(a) because, according to Defendant, the statute mandates a conviction based upon a "published regulation" that gives proper notice to the individual that such conduct is criminal.  (*Id.*)

The Court rejects Defendant's claim.  Contrary to his contention, both the trial record and final jury instructions establish that Defendant's indictment and conviction were based upon the violation of security requirements that are, and have always been, readily available to the public.  (*See generally* Jury Instructions Nos. 13-14,  ECF No. 131) (incorporating three official TSA regulations); *see* 49 U.S.C. § 46314(a); 49 C.F.R. § 1540.107(a); 49 C.F.R. § 1540.105(a)(1); 49 C.F.R. § 1540.105(a)(2).  As the Court previously noted, these official regulations were created and implemented by the TSA to restrict access to sterile areas.  Thus, unscreened access to a sterile area is actionable under Section 43614.  These prescribed regulations were incorporated into the jury's final instructions, are within the scope of Section 43614, and the evidence was sufficient to show a violation of these regulations and support Defendant's conviction.

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:   **CR 2:17-00697 SJO-1**              **DATE:** May 14, 2019

Accordingly, the Court rejects the slew of arguments made by Defendant regarding the "secret" nature of the TSA's SOPs. (Mot. 20-23.) As noted by our sister circuits, the TSA created SOPs to follow the general requirements mandated under the statutes listed in Section 43614(a) which outline, among other things, the specific details of the TSA's screening procedures that are applied to control access to sterile areas. *See Elec. Privacy Info. Ctr.*, 653 F.3d at 3 ("Congress generally has left it to the agency to prescribe the details of the screening process, which the TSA has documented in a set of Standard Operating Procedures not available to the public."); *Corbett v. Transportation Sec. Admin.*, 767 F.3d 1171, 1174 (11th Cir. 2014) ("To fulfill these statutory mandates, [TSA] issues standard operating procedures for security screening nationwide."). The procedures outlined in both the official TSA regulations **and** the undisclosed SOPs are created pursuant to the Administrator's general authority granted under Section 44091(a) to "provide for the screening of all passengers and property...that will be carried aboard a passenger aircraft[.]" 49 U.S.C. § 44901(a).

It follows that under the plain language of both the charging statute and the applicable statutory provisions, a violation of the sterile area screening procedures under **either** the official TSA regulation **or** the undisclosed SOPs is actionable under Sections 43614(a) and (b)(2).

　　　　　　　e.　　Conclusion

In sum, the Court holds that the regulations incorporated into the jury's final instructions fall within the scope of the "prescribed security requirements" under Section 43614(a). Viewing the trial record as a whole, the Court further concludes that there was sufficient evidence for any rational trier of fact to find that Defendant violated these security requirements to form the basis of a conviction under Sections 43614(a) and (b)(2).

　　　　　6.　　Conclusion as to Defendant's Motion for Judgment of Acquittal

On balance, Defendant's Motion fails to adequately show the evidence presented at trial was insufficient to support the jury's verdict.

III.　　RULING

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Judgment of Acquittal in its entirety.

IT IS SO ORDERED.