NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
IAN V. YANNIELLO (Cal Bar No. 265481)
CHRISTINE M. Ro (Cal Bar No. 285401)
Assistant United States Attorneys
General Crimes Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3667/4496
     Facsimile: (213) 894-2927/0141
     E-mail:    ian.yanniello@usdoj.gov
                christine.ro@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-697-SJO |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT DANIEL FLINT'S SENTENCING POSITION |
| v. | Hearing Date: September 16, 2019 |
| DANIEL FLINT, | Hearing Time: 10:00 a.m. |
| Defendant. | Location:     Courtroom of the Hon. S. James Otero |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello and Christine M. Ro, hereby files its Response to Defendant Daniel Flint's Sentencing Position.

//

//

//

This position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and such further evidence and argument as the Court may permit.

Dated: September 12, 2019   Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


         /s/
IAN V. YANNIELLO
CHRISTINE M. RO
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**I.   GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR**

Defendant Daniel Flint defrauded Transportation Security Administration ("TSA") officers and evaded TSA security checkpoints in order to transport over $140,000 in cash to Los Angeles and through the Los Angeles International Airport ("LAX"). As the government has previously explained, because of the aggravating circumstances in this case -- defendant's use and abuse of his status as an attorney to execute the fraud, his use of manufactured and phony diplomatic documents, and the national security implications raised by defendant's purposeful evasion of airport security -- the government has requested an upward variance and a custodial sentence of 14 months' incarceration.

On August 21, 2019, defendant filed his sentencing position, which made various objections to the Presentence Investigation Report ("PSR"). (See Dkt. 157.) The objections are meritless and should be overruled.

**A.   The PSR Correctly Identifies the IHRC as a "Purported" International Organization Based in Pakistan**

Defendant objects to the word "purported" when describing the organization he was allegedly working for when he evaded airport in July 2017. The objection should be overruled. As the government explained at length in its opposition to defendant's motion for acquittal, to execute the fraud, defendant used a self-laminated "diplomat card" which clearly stated the "IHRC HEADQUARTERS" was located at "P.O. Box 1997" in "Islamabad-Pakistan." (Dkt. 147 at 6; see also Dkt. 164 [Addendum to PSR] at 2.) During the government's investigation, the FBI located various websites allegedly linked to the "International Human Rights Commission" that contained

conflicting information about the purported organization and its alleged control persons. (See, e.g., Trial Exs. 1 ["diplomatic card" referencing "www.ihrchq.org"]; 4 [courier letter references "www.ihrc.us"].) In fact, when defendant was interviewed by the FBI in July 2017, he directed agents to a website allegedly linked to his organization and then disclaimed knowledge of the individuals listed. (See Dkt. 91-1 ["I've never seen him before, has it changed? That's news to me. When I saw the website Mr. Shumake's face was on there and it should probably be on there."].) In July 2017, defendant was not working for a bonafide diplomatic organization; he was committing fraud. Defendant's objection should be overruled.

**B. Defendant Manufactured His "Diplomatic Card"**

To commit the fraud, defendant presented a self-laminated "diplomat card," his driver's license, and his attorney bar card to various TSA officers. The evidence at trial was undisputed that defendant helped manufacture the purported "diplomat card." (See Dkt. 147 at 12; Trial Ex. 58 ["I laminated it because I didn't want it to get wore out"]; see also Dkt. 164 [Addendum to PSR] at 2.) Defendant put his identification card together and finished his product. Thus, the Court should therefore reject defendant's claim that "[l]aminating is not the same as manufacturing."

**C. Contrary to Defendant's Position, the Court Should Consider All Relevant Information for Sentencing Purposes**

Before defendant used fake diplomatic credentials, he was involved in another attempt to transport currency through an airport. In August 2016, law enforcement seized $170,000 from Douglas Hampton at the Atlanta International Airport. (See PSR at 8 n.4.) Hampton

2

used an IHRC letter -- similar to the courier letters defendant used in July 2017 -- directing that law enforcement contact "Daniel C. Flint, Esq." the "General Counsel" for the IHRC if they had any questions.  (Id.; see Dkt. 57 [06/21/18 order granting in part the government's motion in limine] at 2-3.)

Defendant asks the Court to strike information about the August 2016 seizure because "it exceeds the evidence in the trial record and lacks foundation."  The request should be denied.  First, the parties previously submitted evidence and litigated the admissibility of the August 2016 seizure in connection with the government's motion in limine (Dkt. 35) and its motion to reconsider the same (Dkt. 105).  Thus, defendant's foundation argument provides no basis to strike the information from the PSR.  (See, e.g., Dkt. 57 at 2-3.)

Moreover, the Court must consider all relevant information for sentencing purposes, not merely evidence that was presented at trial.  See United States v. Vanderwerfhorst, 576 F. 3d 929, 935 (9th Cir. 2009) ("[T]he district court may consider a wide variety of information at sentencing that could not otherwise be considered at trial" and "is not bound by the rules of evidence."); 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").  Here, that defendant was involved in another failed attempt to transport money through an airport using the IHRC ruse is relevant and should be considered.  It provides context about both defendant's role in the scheme and it explains why he evaded airport security using fake

3

diplomatic credentials and a "diplomatic pouch" (i.e., he knew the money would likely be seized if it was found by law enforcement).[1]

### D. The PSR Correctly Applied the Two-Level Enhancement Because Defendant Used Specialized Skills to Execute the Fraud

Defendant concedes he identified himself as an attorney to TSA officers, but claims his "status as an attorney had no bearing whatsoever on TSA's decision" to let him pass through security. (Dkt. 157 at 8-9.) This argument is meritless.

USSG § 3B1.3 provides for a two-level enhancement if the defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3; see id. at n.4 ("'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants ...").

Here, the PSR correctly found that defendant used specialized skill and abused his status as an attorney to facilitate the fraud. When defendant made contact with TSA officers at the Chicago airports, he immediately presented himself as an attorney and "Legal Counsel & Diplomatic Courier" for the IHRC. (See Trial Ex. 1 [Laminated IHRC Card].) Defendant showed TSA officials his Michigan bar card -- an identification card demonstrating that defendant was an attorney and member of the Michigan bar -- which enhanced defendant's overall credibility because TSA officers, like the

---

[1] In August 2016, the money was located inside baggage and it appears that Hampton did not present a diplomatic identification card.

4

general public, expect attorneys to comply with the law and their ethical responsibilities. See, e.g., United States v. Fitzhugh, 78 F.3d 1326, 1332 (8th Cir. 1996) ("Fitzhugh's status as an attorney shrouded the [transactions] with a presumption of regularity, and thus contributed significantly to facilitating the commission of the fraud, and his offense harmed the legal system he was sworn to uphold. In these circumstances, the district court did not err in imposing the § 3B1.3 enhancement." (citation omitted)). Moreover, by first identifying himself as an attorney and providing his driver's license and bar card -- bonafide credentials -- defendant furthered the fraud by reducing the chances that TSA officers would closely scrutinize his phony diplomatic credentials.

Additionally, throughout his two-hour interview with the FBI, defendant repeatedly claimed he was legal counsel to the IHRC and asserted attorney-client privilege to avoid answering questions that would likely incriminate defendant. (See, e.g., Dkt. 91-1 at 21.) He told the FBI several times that he was authorized to travel with the diplomatic pouch based on research he had conducted. At trial, TSA officers also testified that defendant appeared to know exactly what criteria the TSA would be looking for when screening a diplomat at a security checkpoint. (See, e.g., Dkt. 118 [Testimony of TSA Manager Raja Wondrasek] at 262 ["So basically he was volunteering ... [defendant] would like volunteer [information] throughout the whole process and just point to what I'm asking [TSA Officer Stone]" about). Under these circumstances, the § 3B1.3 enhancement applies because defendant used specialized skills to significantly facilitate and conceal the offense. See United States v. Christensen, 828 F.3d 763, 817 (9th Cir. 2015) ("Christensen was an attorney. That position

was a position of trust. The application notes to § 3B1.3 explicitly state that lawyers have a 'special skill' as that term is used in the section."); see also United States v. Goldman, 447 F.3d 1094, 1096 (8th Cir. 2006) ("Use of knowledge gained as an attorney to commit a crime subjects a defendant to an enhancement for abuse of a position of public trust under USSG § 3B1.3.").

**II.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court overrule defendant's objections to the PSR.