**GREGORY NICOLAYSEN**
State Bar No. 98544
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Cell: (818) 970-7247
Fax: (661) 252-6023
Email: gregnicolaysen@aol.com

**Counsel For Defendant,
Daniel Flint**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                                                    )<br>                          Plaintiff,     )<br>                                                    )<br>vs.                                              )<br>                                                    )<br>                                                    )<br>DANIEL FLINT,                        )<br>                                                    )<br>                          Defendant  )<br>_____) | CR 17 - 00697 - 1 - SJO<br><br>**DEFENDANT DANIEL FLINT'S LETTER TO THE COURT FOR SENTENCING**<br><br>Date: September 16, 2019<br>Time:   10:00 a.m.<br>Court: The Hon. S. James Otero |

  Defendant Daniel Flint respectfully submits his enclosed letter to the Court for sentencing.  An unredacted version of the letter is being submitted to the Court in the chambers copy.

DATED: September 12, 2019     Respectfully Submitted,


                   By:_____/S/_____
                   **GREGORY NICOLAYSEN
Counsel for Defendant,
Daniel Flint**

The Honorable S. James Otero
Edward R. Roybal Federal Building
255 East Temple Street
Los Angeles, CA 90012

August 14, 2019

**Re**: USA v Daniel Flint

**Case No**. CR-17-00697-SJO

Dear Judge Otero,

My name is Daniel Flint, I am the Defendant in the above referenced matter. I would like to begin by stating that I do not write these words to you today to make excuses for my actions. For the truth of the matter is, there are no excuses for my actions. Instead, I write to you today to try and explain the reasons for my failures as a professional and, more importantly, my failures as a human being.

I find writing this letter to be the single hardest thing I have done in my 36 years of existence. I find it nearly impossible to find the words necessary to convey how ashamed I am for my actions. Part of the reason for this is because I do not fully understand how I allowed myself to get into this position in the first place.

I do believe part of the reason for my inexcusable failures in this case was my reliance upon my past mentor and law professor – Attorney Douglas Hampton. I first met Mr. Hampton while attending law school at Thomas M. Cooley Law. In addition to teaching my trial skills class, Mr. Hampton allowed me to complete a 6-month externship at his firm, which Cooley required to graduate.

To me, Mr. Hampton was much more than just a law-professor – he was my mentor, in every sense of the word. There are no lawyers in my family, I come from a family of educators, Mr. Hampton was the first and only person in the legal community who provided me guidance outside of a classroom setting. At that time, I truly admired and looked up to him.

After completing my externship and passing the BAR, I was honored when my past-mentor offered to stand next to me and motion the court to swear me in as a lawyer. Afterwards, I was even more excited when he offered me a job as an associate lawyer for his firm. Without hesitation, I accepted. Little-did-I-know, this would become the worst decision of my life.

### *My Appointment as Diplomatic Courier for the IHRC*

It was Mr. Hampton who first offered me the opportunity to become a "diplomat" for the IHRC. With this regard, Mr. Hampton told me that the IHRC's Ambassador to the United States (Mr. Robert Shumake) was looking for a few individuals to participate in humanitarian efforts around the world. Mr. Hampton stated that both he and Mr. Shumake thought I would be a good fit for

this position. In addition, Mr. Hampton indicated that he too was offered a diplomatic appointment, which he accepted.

Prior to my appointment, Mr. Shumake informed me that he was recognized by the United States Department of State as the Honorary Consul for Botswana and Tanzania. I personally viewed Mr. Shumake's State Department issued ID, which indicated to me that he was, in-fact, the Honorary Consul for Botswana and Tanzania.

Mr. Shumake informed me that, before I could begin my work, I must take an oath and be sworn in. Mr. Shumake administered this oath and officially swore me in as a "diplomat" for the IHRC. As I was sworn in, my past-mentor and law-professor was once again by my side as I swore an oath - just as he was when I was sworn in as a lawyer.

Mr. Hampton was the individual who personally handed me my diplomatic appointment letter and diplomatic identification card. It was one of the proudest moments of my life, which is why this entire situation has been especially devastating.

As part of my duties as a diplomatic courier, Mr. Shumake and Mr. Hampton informed me that I would be given diplomatic status on behalf of the IHRC and provided with a specially designated "diplomatic pouch" and diplomatic passport identification card, both of which bore the seal of the IHRC. They advised me that my diplomatic status and diplomatic identification card would allow me to carry the diplomatic pouch past TSA airport security without being screened, as long as it was at the direction, and on behalf of, the IHRC.

Before agreeing to work as a "diplomat," I reviewed legal research emailed to me by my past mentor and law professor. In those emails, Mr. Hampton assured me I had satisfied the requirements needed to act as a diplomatic courier, even at one point telling me to "Become familiar with your rights" – this had significant importance to me, as I interpreted it to mean that Mr. Hampton, the man whose job it was to teach me the law, was assuring me that I had the legal right to act as a diplomatic courier.

Mr. Hampton's statements and actions reinforced my honest belief that the diplomatic identification card he personally handed me would allow me to act as a diplomatic courier. Even after the incident, my past-mentor continued with his assurances: Emailing me and stating "You are a diplomat whether you are a US Citizen or not or recognized by the US State Department. The appoint was legitimate."

I also personally viewed a website indicating that Mr. Shumake was, in-fact, the US Ambassador for the IHRC. However, all this information was provided to me and, for reasons I am still trying to understand today, I determined that reading the research sent to me by my past mentor and law professor was a sufficient amount of investigation. For this, there is no excuse.

## *My Inexcusable Failures*

I do not know why I never questioned Mr. Shumake nor Mr. Hampton, when they told me the identification card I was given was all I needed to act as a diplomatic courier and that TSA

policy requiring a diplomatic passport was not in compliance with international law. What I do know is this failure is 100 percent my fault and are entirely inexcusable.

At that time, I think it was impossible for me believe my conduct was illegal because, had that been true, it meant the one person I lookup up to most in the legal community was flawed. At that time, I could not let myself believe that my idol, the person I literally aspired to be, would ever place me in a situation which would cause me to break the law and worse – violate the oath I took as a lawyer.

### *Understanding My Failures*

For the past two years, not a single day has passed in which I have not contemplated the "how" or the "why" behind my actions.

My entire life I have always felt that I haven't been good enough. In most things I do, although I appear confident on the outside, my mind is constantly telling me "Who am I kidding? I'm not capable enough." The same was true after I became a licensed Attorney. Despite ***knowing*** that becoming a lawyer was an accomplishment, I still ***felt*** as though I wasn't good enough to be a lawyer.

I bring this to your attention for only one reason: Being recognized as someone as noteworthy as a "diplomat" made me ***feel*** like I had finally accomplished something.

I told everyone about this "accomplishment" – friends, family, and colleges. I posted my diplomatic ID on my social-media account, excited to proclaim to the world that I had finally become "someone."

I was genuinely proud of this "accomplishment" and prouder yet when my past-mentor was by my side as I was sworn into the position. That man was there the day I was sworn in as a lawyer

and he was there the day I was sworn in as a "diplomat." Having the one person I aspired to be praise my "accomplishments" finally made me feel like I had become "someone." I had complete faith in the man whose job it was to teach me the law.

### *Saddened and Ashamed*

There are many things about this incident that I am saddened by and ashamed of. Perhaps the biggest being the fact that I used my position as a lawyer to unwittingly advance an incorrect statement of law. The same is true because I became a lawyer to ensure people in positions of power do not abuse such power.

Before becoming a lawyer, I was on a path to become an elementary education teacher; until one event changed my life forever – I was arrested. This event took place while I was tailgating with friends at a Western Michigan University football game. After having one beer at my apartment, I left to meet my friends at the tailgate. I was not intoxicated, a fact I made sure was included in the police report.

My friends were already at the tailgate, which was comprised of 200 plus individuals. It was around 12:30 in the afternoon as I was walking on the sidewalk, looking for my friends, when I felt a tap on my shoulder. I turned around and was surprised to see a police officer standing behind me.

The police officer immediately said "Move," to which I replied "huh?" The officer responded and said "huh nothing, do you want me to make an example out of you?" Confused, I asked the officer "for doing what?" (once again failing to consider the future consequences my present actions will have on my life).

Next, the officer simply grabbed my wrist and throw me behind her where three other officers handcuffed and placed me in the back of a squad car. I was charged with Interfering with a Police Officer. The entire event took place in roughly 5 seconds.

Luckily, I was able to obtain both video and audio of the event. The police officer's microphone captured every word written above. I was furious. I felt violated and utterly disgusted at the fact that the police officer felt she had the power to arrest someone simply because she "wanted to make an example out them." That day, I decided to become a lawyer in order to hold people in positions of power accountable and prevent them from abusing their power.

That event instilled in me a truly deep respect for the law and the belief that no one, especially those in power, are above it. This belief is the reason I am so ashamed about the events that have aspired. This feeling of shame is not changed by the fact that I thought, at that time, my actions were legal, and statements were accurate.

### *Impact of Incarceration*

To say the events that have aspired have impacted my life would be the greatest understatement ever made. Not one day has gone by when I haven't thought about this matter. I am truly ashamed; I feel as though I have failed the entire legal profession and every person in it. This, I fear, is a burden I will carry with me for the rest of my life.

Incarceration will have a far more devastating impact on my life. I am most worried about what will happen to my dog (Bear) if this occurs. Bear is my registered emotional support animal. He has been fundamental to supporting my "mental health" in every aspect of the term. Bear was just ten weeks old when I "rescued" him while I lived in Michigan. We both moved to North Carolina together. Although I only "rescued" Bear on one day, he rescues me on a daily basis.

I have never been married, have no children, and have no family in North Carolina. If I am incarcerated, I do not know what will happen to my dog – a thought I cannot stand to think about. Being separated from my emotional support animal will also have a devastating impact on my mental health. I know this for a fact, as being separated from him for the 3 nights I already spent in custody for this matter, felt like nothing less than torture.

Incarceration will also greatly impact the lives of those who care and rely on me. With this regard, my close friends have asked me to perform their wedding ceremony on February 2, 2020. As an ordained minister, this will be the second couple I have had the privilege to join together for a life of unity. Incarceration will thus prevent this couple from having control over what is undoubtedly one of the biggest events of their lives, and a right fundamental to us all.

Incarceration will also be economically devastating to me. I have no savings and work paycheck to paycheck. Currently, I have 3 personally injury civil cases, however, the outcome of success on these cases is unknown.[2] Most, if not all, of my income is derived from my work reviewing documents as an independent contractor for legal firms. This work pays $23-$27 an hour and is not available on a full-time basis. I struggle to pay my bills each month. Incarceration will undoubtable cause me to become even further in debt that I am today.

### *Acceptance of Responsibility*

As I look back on my actions, I can appreciate and respect how an outside party could view my behavior as intentional. This is especially true because I admit I laminated the diplomatic identification card that was given to me – a fact referenced in footnote 1 of the PSR. However, I took no part in participating in the design, nor manufacturing, of the identification card.

As indicated above, this card was personally handed to me by my past-mentor and law professor at the time I was sworn in as a "diplomat." Moreover, shortly before receiving the physical copy, I received an electronic copy of the purported diplomatic card. At the time I received the electronic copy, I was with a group of individuals at my father's cabin in Michigan's Upper Peninsula.

This fact is evident from a letter of support, written on my behalf, addressed to your honor from Mr. Keith Creagh – who is the former Director of Michigan's Department of Natural Resources and Cabinet Member for the former Governor of Michigan Rick Snyder. With this regard, Director Creagh was present the day I first received the electronic copy of my "diplomatic" credentials. Director Creagh includes this fact in his letter, where he writes "I will not forget

---

[2] The State Bar for both Michigan and North Carolina are aware of this situation. My license in Michigan was automatically suspended but my license in North Carolina is still active. It is uncertain what will happen in either states.

when we were 'at camp' in the Upper Peninsula of Michigan and Dan announced that he had received diplomatic credentials."

In other words, the credentials at issue in this case were provided to me – I in no way participated in its' design nor manufacture. On a side note; if, as the government is clearly trying to imply, I knew my role as a "diplomat" was part of some greater illegal conspiracy, why on earth would I bring this alleged illegal conspiracy to the attention of the person who is literally the second most powerful government official in the State of Michigan?

Regardless, I do respect how the jury, considering *only* the facts as they were presented at trial, could find my actions intentional. I acknowledge my lack of due diligence. My unfounded confidence in my actions was the consequence of my naïve assumption that my past mentor could not possibly be wrong – an assumption I am solely responsible for.

If any good has resulted from this situation, it would be the fact that this event has forced me to look deeply at who I am as a person. In doing so, I have come to the painful realization that my actions were immature, naive, and resulted from an inexcusable lack of judgment.

Moreover, for what it's worth, I have not spoken to either Mr. Hampton nor Mr. Shumake for well over a year. I have no intention of working nor speaking to either of them again, neither professionally nor personally, apart from a potential civil lawsuit I contemplate bringing against both. Although I am deeply saddened by the loss of my mentor, the realizations I have come to understand about the man I trusted most in the legal community has overshadowed that sadness.

In closing, I know my actions do not appear to depict the actions of an honorable man. Despite this appearance, I assure you my intentions were always pure and good. I also realize you likely believe I am either part of something bigger or too stupid to realize something bigger is going on. But I assure you again, from the deepest depths of my soul, I never intentionally attempted to evade security nor promote any illegal conduct by serving as what I believed to be a diplomatic courier. To the extent my actions were illegal, I engaged in such illegal activity unwillingly.

I respectfully ask for a probationary sentence, so that I may begin to rebuild my life and make the contribution to the world I had hoped to make as a "diplomat" for the IHRC.

Very Truly and Respectfully,

*Daniel Flint* (signature)

_____

Daniel C. Flint