UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Priority | |
|---|---|
| Send | |
| Enter | |
| Closed | |
| JS-5/JS-6 | |
| Scan Only | |

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 17-697 SJO | Date | September 11, 2019 |
|---|---|---|---|

| Present: The Honorable | S. James Otero |
|---|---|
| Interpreter | Not Required |

| Victor Paul Cruz | Not Present | Not Present |
|---|---|---|
| Deputy Clerk | Court Reporter/Recorder, Tape No. | Assistant U.S. Attorney |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Daniel Flint | | xx | xx | Gregory Nicolaysen | | xx | xx |

**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANT'S PETITION FOR WRIT OF ERROR CORAM NOBIS OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL** [Docket No. 158.]

This matter is before the Court on Defendant Daniel Flint's ("Defendant") Petition for Writ of Error Coram Nobis or, in the alternative, Motion for New Trial ("Motion"), filed on August 23, 2019 ("Motion"). Plaintiff United States of America (the "Government") opposed Defendant's Motion on September 3, 2019 ("Opposition"). Plaintiff replied on September 6, 2019 "Reply"). For the following reasons, the Court **DENIES** Defendant's Motion.

I.  FACTUAL AND PROCEDURAL BACKGROUND

  A.  Factual Background

On July 20, 2017 Defendant presented himself as a diplomat with the International Human Rights Commission ("IHRC") to a Transportation Security Administration ("TSA") official at Chicago O'Hare International Airport ("O'Hare"). (Mot. 2, ECF No. 140.) Defendant, intending to board a flight to Los Angeles International Airport ("LAX"), insisted his carry-on luggage was exempt from screening under the "Laws of the Geneva Convention" and presented an IHRC "Diplomatic Identification Card." (Mot. 2-3.) TSA officials at O'Hare told Defendant that his credentials were insufficient to pass through security and that he was required to present a valid diplomatic passport in order to be exempt from screening. (Opp'n. 6-7, ECF No. 147; Mot. 3.) After TSA informed Defendant that his documents were insufficient to exempt his baggage from inspection, he declined to submit his baggage to screening and did not board a flight. (Compl. ¶ 9, ECF No. 1.)

Later that same day, Defendant cancelled his flight out of O'Hare and booked a new flight from Chicago Midway International Airport ("Midway") to LAX for that same afternoon. (Mot. 3.) This flight included a connecting flight at Minneapolis-St. Paul International Airport ("MSP") before making its final arrival to LAX. (Mot. 3.) Defendant again presented himself as an IHRC diplomat to TSA at Midway. (Opp'n. 8-9.) Midway TSA officials permitted Defendant to travel without submitting his baggage for TSA screening. (Comp. ¶ 10.) On July 25, 2017, Defendant again presented himself as a diplomat with the IHRC to Midway's TSA for a flight to MSP, with a later connecting flight to LAX. (Mot. 4.) TSA officials accepted Defendant's representation, and he was allowed to travel without submitting his baggage for TSA security screening. (Mot. 4-5.) TSA officials at Midway subsequently discovered that Defendant had not provided the correct credentials to be exempt from screening.

Case 2:17-cr-00697-SJO Document 169 Filed 09/11/19 Page 2 of 7 Page ID #:2632

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

| CASE NO.: | CR 2:17-00697 SJO-1 | DATE: | September 25, 2019 |
|---|---|---|---|

(Opp'n. 10-11.) While Defendant was en route to LAX, TSA officials reported the incident to FBI and law enforcement officials. (Mot. 4-5; Compl. ¶ 11.)

FBI agents and other law enforcement officers arrived at Defendant's boarding gate approximately 15-20 minutes before his flight landed at LAX. (Mot. 5; Opp'n. 11.) Once the plane arrived at the terminal, an air marshal and another law enforcement officer boarded the plane to escort Defendant off the flight. (Mot. 5; Opp'n. 11.) Defendant cooperated with authorities and was observed "walking on his own accord" and "not fighting anyone." (Opp'n. 11; Reporter's Transcript of Trial Proceedings Day 2 ("RT2") 378, ECF No.118.) After the authorities escorted Defendant to an interview room inside of LAX, the FBI conducted an interview with him for approximately two hours. (Mot. 6.) Defendant was cooperative throughout the interview and continued to assert that he was a bonafide diplomat. (Mot. 6; Opp'n. 11-12.) Defendant presented the same credentials and documents to the interviewing agents and falsely told agents that he had never been turned away from a screening checkpoint while attempting to travel with his diplomatic pouch. (Mot. 6-7; Opp'n. 12-13.)

The agents ultimately conducted a search of Defendant's bag and discovered approximately $148,145 in U.S. currency stuffed inside plastic shopping bags. (Compl. ¶ 14.) Agents from the United States Department of State later confirmed that Defendant has no diplomatic status with the Department's Office of Foreign Missions ("OFM") and that the alleged ambassador Defendant claimed to be working for was not a recognized ambassador for any organization. (Comp. ¶ 17.)

    B.    Procedural Background

On November 7, 2017, Flint was indicted on one count for entering an airport area in violation of security requirements under 49 U.S.C. §§ 46314(a), (b)(2). (*See generally* Indictment, ECF No. 15.)

Defendant Flint's three-day jury trial began on October 16, 2018. (*See generally* Reporter's Transcript of Trial Proceedings Trial Day 1 ("RT1"), ECF No. 117.) On October 18, 2018, the Court delivered the following jury instructions as to the elements that the Government must prove beyond a reasonable doubt to sustain a conviction under 49 U.S.C. §§ 46314(a), (b)(2):

(1)    the defendant entered an airport area that serves as an air carrier, namely, the sterile area of Terminal 3 at Los Angeles International Airport;

(2)    the defendant did so in violation of security requirements and regulations prescribed under sections 44901, 44903(c) of Title 49 of the United States Code[1]; and

---

[1] The jury was also instructed that 49 U.S.C. § 44901 ("Section 44901") grants the head of the TSA (the "Administrator") the authority to enact security requirements which "provide for the screening of all passengers and property, including United States mail, cargo, carry-on, and checked baggage, and other articles that will be carried aboard a passenger aircraft operated by an air carrier ... in air transportation or intrastate air transportation." 49 U.S.C. § 44901(a). Similarly, 49 U.S.C. § 44903(c) ("Section 44903(c)") states that the Administrator shall prescribe regulations which require airport operators to "establish an air transportation security program that ... is adequate to ensure the safety of passengers." 49 U.S.C. § 44903(c). The relevant federal airport security regulations and requirements prescribed under these enabling statutes were stated as follows:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | | | |
|---|---|---|---|
| CASE NO.: | CR 2:17-00697 SJO-1 | DATE: | September 25, 2019 |

(3)  the defendant acted knowingly and willfully; and

(4)  the defendant also acted with the intent to evade the security regulation.

(*See* Jury Instruction No. 14, ECF No. 131; RT3 445-48.)

The jury was instructed that the term "sterile area" is defined as meaning a "portion of an airport where passengers have access to boarding aircraft and to which the access generally is controlled by the Transportation Security Administration; an aircraft operator through the screening of persons and property." (*See* Jury Instruction No. 13.) For a diplomatic pouch to be exempt from security screening at TSA, the diplomatic courier "must possess and present to TSA a valid diplomatic passport ... a courier letter ... and a diplomatic pouch ...[.]" (*Id.*) "Individuals who are not diplomatic couriers and who do not possess valid diplomatic documentation must submit their items for screening and inspection **before entering the sterile area of an airport**." (RT3 at 447.)

On October 19, 2018, the jury found Defendant Daniel Flint guilty of intentionally evading airport security requirements, in violation of 49 U.S.C. §§ 46314(a), (b)(2). (*See generally* Reporter's Transcript of Trial Proceedings Trial Day 4 ("RT4"), ECF No. 120; Jury Verdict, ECF No. 130.) Sentencing is set for Monday, September 16, 2019. (*See* ECF No. 156.)

    1.    <u>The Instant Motion</u>

Defendant moves for the Court to vacate the jury's guilty verdict, dismiss all charges against him, or grant an evidentiary hearing to address the issues he presents. (*See* Mot., ECF No. 158.)[2] Alternatively, Defendant requests that the Court vacates the judgment against him and grant Defendant a new trial pursuant to Federal Rule of Criminal Procedure ("Rule") 33. (*Id.*) The Court addresses Defendant's requests in turn.

II.    <u>DISCUSSION</u>

---

The federal regulations and security requirements prohibit any person from entering a sterile area of an airport or boarding an aircraft without submitting to screening and inspection of his or her person and accessible property; circumventing or attempting to circumvent any security system, measure, or procedure implemented to protect passengers and property on an aircraft; and/or entering a sterile area without complying with the procedures being applied to the area. (*See* Jury Instruction No. 13; RT3 445.)

---

[2] The Court admonishes Defendant for violating the Court's Standing Order, ¶ 16(c). (*See* ECF No. 23 at ¶16 ("Memoranda of points and authorities in support of motions shall not exceed twenty-five (25) pages").) Defendant's Motion is thirty-five (35) pages long. (*See* Mot.) In the future, the Court will strike or decline to consider portions of Defendant's briefs which exceed the page limit imposed by the Standing Order.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

| | |
|---|---|
| CASE NO.: CR 2:17-00697 SJO-1 | DATE: September 25, 2019 |

A.  Legal Standard

   1.   Petition for Writ of Error Coram Nobis

"Where the errors are of the most fundamental character, such that the proceeding itself is rendered invalid, the writ of coram nobis permits a court to vacate its judgments." *Estate of McKinney By & Through McKinney v. United States*, 71 F.3d 779, 781–82 (9th Cir. 1995) (quoting *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir.1987) (citation omitted)). District courts have authority to issue the writ under the All Writs Act, 28 U.S.C. 1651(a). *Id.* (internal citations omitted).

The writ of error coram nobis "affords a remedy to attack an unconstitutional or unlawful conviction in cases when the petitioner already has fully served a sentence." *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994). To qualify for coram nobis relief, a petitioner must demonstrate the following: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.'" *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir.1991) (quoting *Hirabayashi*, 828 F.2d at 604).

   2.   Motion For a New Trial

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." *Id.* at subd. (b)(1). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." *Id.* at subd. (b)(2).

A criminal defendant must satisfy a five-part test in order to prevail on a motion for a new trial: "(1) [T]he evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005); *United States v. Hinkson*, 585 F.3d 1247, 1283–84 (9th Cir. 2009) (same).

B.  Analysis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority    Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | |
|---|---|
| CASE NO.:    CR 2:17-00697 SJO-1 | DATE: September 25, 2019 |

1.    <u>Defendant's Petition for Writ of Error Coram Nobis is Denied</u>

     a.    <u>Defendant's Petition is Procedurally Barred</u>

Defendant is not eligible for coram nobis relief because he has not yet been sentenced and therefore has not "fully served" any sentence. *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013) (Petition for writ of coram nobis provides a way to collaterally attack a criminal conviction for a person who is no longer in custody and therefore cannot seek habeas relief.); *United States v. Nosal*, 743 F. App'x 816, 817 (9th Cir. 2018) ("The district court properly denied Nosal's petition because the rare writ of coram nobis is not available until a petitioner already has fully served [his] sentence.") (citing *Telink*, 24 F.3d at 45).

Defendant argues that the Ninth Circuit and the Supreme Court have never explicitly limited coram nobis relief to "only" those petitioners who have already fully served their sentences, but this is not persuasive. The Ninth Circuit and Supreme Court have made it clear that coram nobis relief exists to fill a "very precise gap in federal criminal procedure"-it is meant for those who have already fully served their sentences and are therefore unable to pursue habeas relief under 28 U.S.C. § 2255 to remedy any "lingering collateral consequences" from their unlawful convictions. *Telink*, 24 F.3d at 45; *Chaidez*, 568 U.S. at 456 n.1. Defendant is not in that position. Defendant presents no case law, and the Court is not aware of any, granting coram nobis relief to petitioners who have not yet been sentenced.

Thus, Defendant is procedurally barred from seeking coram nobis relief.

     b.    <u>Defendant's Petition Lacks Merit</u>

Even if Defendant were eligible to petition for coram nobis relief, the petition would fail on the merits because there was no error of the "most fundamental character" here. *McClelland*, 941 F.2d at 1002.

Defendant requests coram nobis relief on a theory of ineffective assistance of counsel. (Mot. 15.) To prevail on an ineffective assistance of counsel claim, Defendant must show that: (1) counsel's actions were outside the wide range of professionally competent assistance, measured under a standard of "reasonably effective assistance," *Hovey v. Ayers*, 458 F.3d 892, 904 (9th Cir. 2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984); and that (2) he was prejudiced by reason of counsel's actions, that is, there is "a reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). The standard a defendant must meet is both "rigorous" and "highly demanding," and requires a showing of "gross incompetence" on the part of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986).

Here, Defendant claims he received ineffective assistance of counsel because his appointed counsel in the Federal Public Defender's Office (the "FPD") failed to contest the authenticity of the audio recording of his FBI interview, despite his urging. (Mot. 15-27.) However, his trial counsel's strategic decision not to investigate or pursue a motion to suppress the recording does not constitute ineffective assistance of counsel. In response to Defendant's accusation, the Government provides a sworn declaration from Federal Air Marshall Wesley Williams who interviewed Defendant on July 25, 2017/ (ECF No. 162-1 at ¶¶ 1-2.) Williams states that after he recorded Defendant's interview on his iphone, he uploaded the audio files directly to the FBI's internal computer system,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| CASE NO.: | CR 2:17-00697 SJO-1 | DATE: September 25, 2019 |
|---|---|---|

made copies, and sent them to the Government. (*Id.* at ¶ 4.) Williams states that the files he sent were identical to those recorded on his phone, and were not altered or manipulated in any way. (*Id.*) The Government confirms that the audio recording Defendant received in discovery was the same audio recording which Williams immediately uploaded to the FBI's internal computer system. (Mot. Ex. B, ECF No. 158-3.) Defendant provides no evidence to refute these statements or show that the Government deleted any "original" audio recordings from Defendant's interrogation. (*See* Reply.) Moreover, this recording was not admitted at trial. (Opp'n. 6.) Thus, Defendant fails to show that his FPD's failure to investigate or pursue a motion to suppress was ineffective assistance, or that but for counsel's decision, the proceeding would have been different.

Defendant's petition for coram nobis relief fails on the merits.

   c. Conclusion

Defendant's Petition for coram nobis relief is **DENIED.**

  2. Defendant's Motion for a New Trial is Denied

   a. Defendant's Motion for a New Trial is Untimely

Defendant argues that the expert report on the alleged "one-amplitude-frequency inconsistency" (the "Expert Report") is newly discovered evidence warranting a new trial. (*See* Mot. Ex. A, ECF No. 158-1.) The Government contends that all recorded audio was produced to counsel for Defendant on December 8, 2017, and produced the audio clips for trial[3] on October 10, 2018. (Opp'n. 7, ECF No. 162.) Defendant does not dispute that he received this audio on December 8, 2017. (*See* Reply, ECF No. 163.) Because the audio itself, which is the basis of the expert report, is not newly discovered, Defendant needed to hire an expert and if at all, file a Rule 33 Motion no later than 14 days after October 19, 2018, the day that the jury rendered its verdict. Fed. R. Crim. P. 33(b)(2).

Thus, Defendant's Motion for a New Trial is untimely.

   b. Defendant's Motion for a New Trial Lacks Merit

As established, in order to receive a new trial: "(1) [T]he evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *Harrington*, 410 F.3d at 601.

---

[3] The evidence containing the alleged "one-amplitude-frequency inconsistency" was not admitted at trial. (Opp'n. 6.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | |
|---|---|
| CASE NO.: CR 2:17-00697 SJO-1 | DATE: September 25, 2019 |

Here, as the Government correctly points out and Defendant does not dispute, the underlying evidence is not newly discovered. (Opp'n. 6; *See* Reply.) Further, Defendant could have discovered the alleged "one-amplitude-frequency inconsistency" between December 8, 2017 and October 17, 2018, over ten months before his trial began. The evidence that Defendant presents now was not material to issues at trial because it was not exculpatory, and it was never presented. Moreover, Defendant does not challenge the accuracy of the audio exhibits that **were** introduced as evidence at trial. (*See* Mot.; *See* Reply.) Moreover, Defendant fails to show that admission of this allegedly newly discovered evidence would result in acquittal. Defendant does not challenge the authenticity or accuracy of any of the evidence that actually was presented at trial. The evidence presented at trial was sufficient for the jury to find Defendant guilty beyond a reasonable doubt of **intentionally** evading airport security requirements. As such, is unlikely that presentation of the allegedly newly discovered evidence would result in acquittal.

Defendant's Motion for a New Trial is without merit.

        c.     Conclusion

Defendant's Motion for a New Trial is **DENIED.**

III.    RULING

For the foregoing reasons, the Court **DENIES** Defendant's Motion in its entirety.

IT IS SO ORDERED.