Case No. 2:17-cr-00697-SJO

Daniel Flint
61405 North Ridge Trail  Washington,
MI 48094 (586) 960-6790  d2flint@gmail.com

2:17-cr-00697-PA

FILED
CLERK, U.S. DISTRICT COURT

12/22/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CDO___ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL FLINT,<br><br>Defendant. | Case No. 2:17-cr-00697-SJO |

REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S PETITION FOR WRIT OF ERROR CORAM NOBIS *OR* MOTION FOR NEW TRIAL

NOW COMES Defendant, Daniel C. Flint ("Mr. Flint"), *pro se,* who states his Reply to Plaintiff's Response to his Petition for Writ of Error Coram Nobis or Motion for New Trial, as follows:

I. REPLY TO GOVERNMENT'S INTRODUCTION.

To begin, it is essential to emphasize that Mr. Flint's recent petition for coram nobis relief (the "Second Petition") is not a mere repetition of his previous claims but, in fact, introduces new and compelling evidence. The Government's assertions that the Second Petition are baseless and merely recycle the same altered-evidence claim is a gross oversimplification. The new evidence

1

Case No. 2:17-cr-00697-SJO

related to Agent Marriott's deposition testimony and hearing testimony from the North Carolina State Bar disbarment proceedings, reveals significant inconsistencies and contradictions regarding the handling and authenticity of the audio recording. Contrary to the government's claim, the expert report is not being "relitigated." Instead, its findings have been substantially bolstered by this new evidence, which did not emerge until after Mr. Flint was released from prison.

II. REPLY TO GOVERNMENT'S "FACTUAL" BACKGROUND AND PROCEDURAL HISTORY

    A. Contrasting Narratives: Uncovering Government Contradictions of Fact

In crafting their narrative, the Government has depicted Mr. Flint as a figure of deliberate deception and fraud. Yet, a closer examination of the government's own filings, particularly the forfeiture complaint related to this matter ("the forfeiture complaint"), reveals a different story. (Case 2:18-cv-00670-PVC Document 1, filed on January 26, 2018). When comparing the government's allegations in the forfeiture complaint to the allegations made in response to this petition, a series of contradictions emerge, which significantly undermines the government's portrayal of Mr. Flint as a fraudulent and deceitful individual. These discrepancies not only challenge the narrative of fraud but also suggest a more complex and nuanced reality than the one presented in the government's response to Mr. Flint's petition.

In this case, the Government contends that Mr. Flint "abused his status as a lawyer and presented fraudulent 'diplomatic' documents to TSA", while "conducting a deceptive scheme to bypass security." However, in the forfeiture complaint, the government admits that "TSA officials explained to Flint that his documents were *insufficient* to exempt his baggage from

inspection" (Id, (emphasis added)). Thus, TSA officials did not categorize Flint's documents as fraudulent, but instead, merely "insufficient." (Id).

Moreover, the government's forfeiture complaint alleges that Mr. Flint had explained to the FBI that his "diplomatic status" was granted to him by Robert Shumake, who "was an IHRC Ambassador to the United States" (Id.) This admission by the government starkly contrasts with its current portrayal of Mr. Flint as being intentionally deceitful and fraudulent. It implies that the diplomatic document in question was legitimately provided to him by an individual who held himself out as having the authority to grant Mr. Flint his diplomatic status. Thus, the government's own allegations reveal a likely misunderstanding rather than deliberate fraud.

The discrepancies between the allegations in the government's forfeiture complaint and this petition raise significant questions. They suggest a scenario that is more complex and nuanced, undermining the government's current portrayal of Mr. Flint's actions as unequivocally fraudulent and deceptive. The TSA's characterization of Mr. Flint's documents as "insufficient", not fraudulent, coupled with the government's acknowledgment of his claimed diplomatic status, casts serious doubts on the accusations of deception.

   B. Government Attempts to Mislead and Manipulate this Court

      1. Government Attempt to place burden of proving integrity of evidence on Mr. Flint

Regarding Mr. Flint's first coram nobis petition, the government claims that he "filed no declaration, nor even claimed in his motion, that he said something that was deleted from the recording, let alone specify what that something was." (government response, p 9, ¶ 16). However, what the Government fails to inform this Court of is the fact Mr. Flint's first petition

has an entire section dedicated to this issue, with a heading labeled: "Mr. Flint is not required to submit evidence as to what was, in-fact, deleted." (Dkt.158)

The government, through its' statement, suggests that a defendant alleging government manipulation of evidence, by intentionally deleting portions of audio recordings, must specify what exactly was deleted. This implies the burden of proof lies with the defendant to demonstrate what content was allegedly deleted. However, as Mr. Flint's first petition clearly states, the burden of proof regarding the integrity of evidence lies squarely with the government, as established in *King v. United States*. (Id.)

Contrary to the government's position, Mr. Flint's first petition correctly asserts that it's the government's responsibility to prove the evidence's authenticity, not his to detail what was deleted.

2. Government Attempt to Discredit the Expert Report

The government's characterization of the expert report by Doug Carner as "ambiguous, conclusory, unreliable on its face, and not material" fails to recognize the depth and specificity of the analysis provided. Contrary to the government's assertions, Carner's comprehensive examination, including Exhibit A with waveform and spectral spot testing results, offers critical insights into the audio file in question.

Carner's approach was thorough – encompassing observational, metadata, and audio analyses. His techniques, including critical listening-viewing for synchronization inconsistencies and metadata comparison, revealed significant details. Particularly telling was the identification of an anomaly at 5:58.14465 in the recording, referred to as the 'Event'. This part of the audio

was marked by unique noise and spectral characteristics, indicating potential manipulation, as thoroughly detailed and illustrated in his Exhibit A, attached to his expert report.

Despite these facts, the government attempts to misguide this court into believing that the expert somehow made "contradictory opinions." However, Carner's findings consistently indicate a non-continuous recording that is suggestive of audio manipulation. His analysis, going from a non-continuous recording to a more refined conclusion of potential editing, illustrates evolving insights that do not conflict but rather converge on the likelihood of a manipulated audio file.

In addition, the government overlooks the impact of the destruction of the original audio on Carner's ability to provide a definitive conclusion. As explained in Mr. Flint's petition, the absence of the original recording, a direct result of the government's actions, made it ***impossible*** for Carner to reach a "definitive" or "high" degree of expert confidence.[1] This crucial context demonstrates that Carner's conclusion of probable manipulation, reached under these constrained circumstances, carries significant weight despite the inherent limitations imposed by the government's intentional destruction of the original audio.

The government's portrayal of Carner's conclusion as merely speculative misrepresents his expert analysis. Drawing on his extensive experience in forensic audio analysis, Carner concluded that the Event's audio profile was inconsistent with typical equipment malfunctions and more indicative of editing manipulation. This conclusion was reached through a meticulous

---

[1] The Government's recent filing, Exhibit J, asserts the existence of the original audio recording. However, it is important to note that during the expert analysis process, the Government informed defense counsel that they had already destroyed the original recording. This contradiction is a crucial element in the case. For a comprehensive overview of this matter, please refer to the original petition for additional details and context.

examination of various audio file elements, including noise profiles and amplitude-frequency inconsistencies, supported by the waveform and spectral views he attached as Exhibit A to his

---

affidavit. This detailed and reasoned analysis stands as a critical piece of evidence, challenging the integrity of the audio evidence used in Mr. Flint's trial.

III. REPLY TO GOVERNMENT'S ARGUMENT

        1. The Merits of This Petition Revolve Around New Evidence That Has Not Previously Been Presented To Any Court.

The government next attempts to misguide this court by erroneously insinuating that both this court and the 9th circuit have adjudicated the merits and issues presented. The government's depiction of Mr. Flint's Second Petition as nothing more than an attempt to "relitigate" the expert report and "falsely accuse" Marriott of perjury is a gross misrepresentation of the facts and the law. This portrayal not only neglects the gravity of the new evidence but also attempts to trivialize serious allegations of evidence manipulation and perjury.

With this regard, the government contends that Mr. Flint cannot satisfy the first requirement of coram nobis relief because he has no valid reason for not seeking relief earlier. Here, the government argues that "the crux of defendant's Second Petition is a report he obtained in May 2019. The district court evaluated it and rejected it... defendant could have --- and should have --- asserted his purported IAC and other claims in a habeas petition. He failed to do so and does not offer any justification for the failure." This argument fundamentally misunderstands and misrepresents the nature of this case. It is evident that the government seeks to trivialize the

Case No. 2:17-cr-00697-SJO

gravity of the newly discovered evidence by focusing narrowly on the May 2019 report and the procedural history of the case.

Let's be clear: the report obtained in May 2019 is not the sole foundation of Mr. Flint's Second Petition. What the government conveniently omits is the critical evidence that emerged after Mr. Flint's release from prison, demonstrating unequivocally that the audio recording and transcription presented at trial were manipulated. This revelation is not a minor detail; it is a bombshell that unravels the entire prosecution's case, as it proves Mr. Flint did not lie to the FBI. The notion that Mr. Flint should have included these claims in a habeas petition is both legally and practically absurd, as this crucial evidence was not available.

Furthermore, the government's reliance on precedents such as *United States v. Bejacmar* and *Maghe v. United States* to argue for the petition's rejection on procedural grounds is a blatant misapplication of legal principles. These cases do not account for a scenario where key evidence, foundational to the conviction, is later revealed to be tainted, proven so by sworn testimony of the government's lead witness, which occurred during a BAR admission hearing held after the defendant was released from prison. Mr. Flint's case presents a starkly different scenario then those present in the caselaw cited by the government.

2. Government Attempt to Mislead this Court into Believing Marriot's Testimony, "on its face does not support Mr. Flint's altered-evidence claim."

The government's assertion that Marriott's testimony does not support Mr. Flint's alteredevidence claim is a misleading representation of the facts. Mr. Flint's petition details how, during the BAR hearing and deposition, Marriott was questioned about a specific portion of the audio transcript used against Mr. Flint at his criminal trial. This portion included Marriott's question,

Case No. 2:17-cr-00697-SJO

"When was the last time you tried to fly?"

Despite testifying under oath – – twice – – that Mr. Flint had answered this question, Marriott could not account for why his answer was not in the transcript. This omission is significant, as it aligns with the exact point in the transcript where the audio forensic expert identified "the Event." The absence of Mr. Flint's response, corroborated by Marriott's confirmation of its existence, combined with the expert's finding of content manipulation, leads to only one conclusion – the United States Government intentionally and deliberately deleted Mr. Flint's response too make it appear as though he was lying to the FBI.

3. Government Attempt to Mislead this Court into Believing that Mr. Flint did not "challenge any evidence presented to the jury"

The government next asserts that Mr. Flint "does not credibly challenge any of the evidence that was presented to the jury in this case." However, this statement is patently false, as both the expert analysis and Marriott's deposition and hearing testimony focus specifically on the transcript of Mr. Flint's FBI interview, specifically the segment found on lines 17 to 19 of page 23. A side-by-side comparison of this transcript with the version **submitted to the jury** reveals that the challenged evidence was indeed presented at Mr. Flint's trial. (*see* Mr. Flint's petition for more detailed analysis).

4. Government Attempt to Convince this Court that Mr. Flint Must "Dispute the Significant Trial Evidence"

The Government contends that Mr. Flint's petition is untenable because he "did not dispute the significant trial evidence that proved his guilt." This assertion not only misrepresents the essence of Mr. Flint's challenge but also employs a misleading tactic. By labeling certain

evidence as "significant" and asserting its non-dispute by Mr. Flint, the Government attempts to divert attention from the crux of the matter. The focal point of Mr. Flint's petition is not about whether he contested specific pieces of evidence regarding his actions, but rather centers on the alleged manipulation of evidence by the Government. This crucial aspect, bearing heavily on the integrity of our justice system, is conspicuously overlooked in the Government's argumentation.

Furthermore, the Government's present stance is inconsistent with its earlier response to Mr. Flint's First Petition. In addressing Mr. Flint's first coram nobis petition, the Government recognized the standards necessary for its success. Notably, at that time, it did not claim that the petition should be dismissed on the grounds that Mr. Flint had not challenged any "significant trial evidence' of his guilt". Therefore, the government should not be permitted to make such an argument now.

Regardless, there is *no* requirement that a defendant seeking coram nobis relief dispute "significant trial evidence" to succeed – and the government has included no such authoritative holding to say otherwise.

5. The Petition Currently Before the Court has Merit

According to the government, "the 'evidence' defendant submits simply does not support his claim." Here, the government implies that the "evidence" is not really "evidence" that is of any importance. However, this assessment grossly underestimates the gravity and credibility of the evidence brought forth. Mr. Flint is not simply making baseless accusations; he has presented concrete, expert-backed evidence that strongly indicates manipulation and deception on the part of the government.

Contrary to the government's assertion, the deletion of portions of Mr. Flint's FBI interview and the conflicting testimony from Marriott are not minor oversights but significant errors that compromise the integrity of the trial. These errors, detailed in Mr. Flint's petition, collectively constitute a serious breach of due process. This situation is far from being an instance of "twenty times zero" as the government suggests.

Furthermore, the government's claim that no contradictory statements exist regarding the uploading of the original audio is patently false. In addition to the substantive arguments and evidence presented in Mr. Flint's original petition, the Government's latest submission further undermines its own position through a glaring contradiction. Exhibit J of the Government's response asserts that any FBI agent "would need to first transfer the recording from their government-issued cellular telephone to an FBI computer." (Gov Response, Exhibit J). This statement *directly* contradicts Marriott's sworn testimony that the audio in Mr. Flint's case is "not in any computer right now" and was never uploaded to the FBI's system because "that is not our protocol" and "when I looked in the case file, it was not uploaded into the case file." (Defendant's Petition, Ex. L., pp. 104, 14-19; 110, 19-25). Even in responding to this petition, the Government cannot get out of its own way and continues to contradict itself – demonstrating yet again the existence of a persistent effort to obscure the evident manipulation of evidence.

Next, the government attempts to reject the perjury claim against Marriott. However, it cannot deny that Marriott's testimony during the criminal trial indicated that Mr. Flint researched traveling with "this diplomatic passport," while her testimony at the BAR hearing and deposition revealed that Mr. Flint stated he did not possess a diplomatic passport. This stark contradiction

transcends mere semantics and indicates deliberate misinformation. It is a clear indication that her testimony during the criminal trial was misleading and false.

### 6. Reply to Government Arguments Related to Mr. Flint's Ineffective Assistance Claim and New Trial Motion

The government has presented no new arguments warranting further response. Its statements made regarding Mr. Flint's ineffective assistance claim and new trial motion simply reiterate points already addressed in Mr. Flint's original petition and this reply. Accordingly, Mr. Flint will refrain from redundant rebuttals, respecting the Court's time and resources. Any necessary refutations or clarifications have been comprehensively covered.

### B. This Court Should Not Consider Arguments or Authorities Cited in Footnotes

In accordance with California Rules of Court, rule 8.204(a)(1)(B), which requires each point in a brief to be stated under a separate heading with supporting authority, the Court should not consider legal authorities or case laws cited solely in footnotes of the government's response. This rule is designed to ensure arguments are clearly and systematically presented. Substantial arguments placed in footnotes do not align with these guidelines and, as such, should not be factored into the Court's evaluation.

## IV. CONCLUSION

The evidence presented in Mr. Flint's petition is not merely compelling; it is incontrovertible, exposing a stark and alarming instance of governmental misconduct. The manipulation of evidence by the government in Mr. Flint's case is not a matter of conjecture but a demonstrable fact, substantiated by expert analysis and unambiguous inconsistencies in the government's own narrative.

The government's handling of the audio recording and Agent Marriott's conflicting testimonies are not just questionable; they represent a deliberate and calculated effort to distort the truth. The discrepancies in the government's response, coupled with their failure to address crucial aspects of Mr. Flint's petition, speak volumes. This is not a case of mere oversight or procedural error; it is a clear and egregious violation of the principles of justice and due process.

Moreover, the government's attempt to downplay these serious infractions and shift the burden of proof to Mr. Flint is not only legally indefensible but also indicative of a desperate attempt to divert attention from their own malfeasance. The destruction of the original audio recording and the intentional manipulation of evidence go beyond mere procedural irregularities; they constitute a fundamental miscarriage of justice.

This case transcends the fate of a single individual; it is a litmus test for the integrity of our legal system. Granting Mr. Flint's petition is not just a matter of rectifying a wrongful conviction; it is about sending a clear message that such flagrant abuses of power will not be tolerated. It is about restoring faith in a system that is founded on the principles of fairness and justice. The evidence is not just persuasive; it is overwhelming and demands action. This Court has not just an opportunity, but an obligation, to right this wrong and uphold the very principles upon which our legal system is built.

Case No. 2:17-cr-00697-SJO

| | |
|---|---|
| PROOF OF SERVICE<br>The undersigned certifies that, on December 22, 2023, the forgoing instrument was served by email to the same email address which served Mr. Flint the Government's Response, which was: Bondi, Amy (USACAC) Amy.Bondi@usdoj.gov<br><br>This document was filed with the court using the Electronic Filing and Case Access for People Without Lawyers system on December 22, 2023.<br><br><br>Signature __/s/ Daniel Flint_____ | Respectfully Submitted,<br><br>*/s/ Daniel C. Flint*<br>Daniel C. Flint<br><br>Dated: December 22, 2023 |

13